UNITED STATES of America, Appellee,

v.

Patricia BREWER, Appellant.

No. 75–1105.

United States Court of Appeals, Fourth Circuit.

Argued July 9, 1975.

Decided Sept. 23, 1975.

---

William H. Murdock, Durham, N.C. (Murdock, Jarvis, Johnson & LaBarre, Durham, N.C., on brief), for appellant.

Carl L. Tilghman, Asst. U.S. Atty. (Thomas P. McNamara, U.S. Atty. for the E.D.N.C., on brief), for appellee.

Before CRAVEN, BUTZNER, and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

Patricia Brewer, the operator of a cigarette mail order business, appeals a judgment convicting her of mail fraud in violation of 18 U.S.C. § 1341.[1] The district court, 401 F.Supp. 1085, ruled that she had defrauded Florida of taxes by using the mails to sell cigarettes to Florida residents without reporting the transactions to state tax officials as required by the Jenkins Act, 15 U.S.C. § 375 et seq.[2] In her assignments of

1. See note 3, infra.

2. See note 4, infra.

3. The mail fraud statute, 18 U.S.C. § 1341, provides in part:

error, Brewer contends that her conduct was not fraudulent, that her use of the mails was not for the purpose of executing a scheme to defraud, and that her only fault was failure to file the reports required by the Jenkins Act. We affirm the judgment.

An eight-count indictment, describing a separate transaction with a Florida resident in each count, alleged that Brewer devised a scheme to obtain money by defrauding Florida of sales and use taxes due on the purchase of cigarettes by Florida residents. It charged that she set up a business in North Carolina and, using the mail, solicited orders from and delivered cigarettes to Florida residents at a price substantially lower than the cost, including tax, of cigarettes sold in Florida. The indictment also alleged that she did not file her name and address with Florida tax officials or furnish them with copies of invoices because she did not want to lose her customers.

The district court heard the case on stipulated facts that established Brewer's use of the mails for her interstate sales. The proof showed that she sold the cigarettes for a stated amount without making any representation about taxes. She paid all North Carolina taxes, but the purchasers did not pay the Florida use taxes they owed. The parties also stipulated that Brewer was aware of the Jenkins Act but did not comply with it. The district court filed a written opinion finding her guilty of mail fraud. It fined her $1,000 and put her on probation for two years.

I

The essential elements of an offense under the mail fraud statute are "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954).[3] The statute

"Whoever, having devised or intending to devise any scheme or artifice to defraud, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized de-

does not define a scheme to defraud, and it contains no restrictive language excluding any type of fraudulent conduct in which use of the mails plays an essential role. On the contrary, the plain language of the statute condemns any scheme to defraud in which the mails are employed, *Parr v. United States*, 363 U.S. 370, 389, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), including the evasion of sales and use taxes. *United States v. Mirabile*, 503 F.2d 1065, 1066 (8th Cir. 1974). It leaves "the matter of what conduct may constitute such a scheme for determination under other laws." *Parr*, 363 U.S. at 389, 80 S.Ct. at 1182.

The other laws on which the government relies are the Jenkins Act and the Florida cigarette tax statute. The Jenkins Act[4] requires the seller of cigarettes in interstate commerce to register with the tax officials of states where he advertises or into which he ships cigarettes and to furnish copies of invoices disclosing the purchasers' names and addresses. Violation is a misdemeanor. Florida imposes seventeen cents' tax on the sale or use of a pack of cigarettes.

When cigarettes are shipped from outside the state, the recipient is responsible for paying the tax.[5]

The district court's finding that Brewer's conduct constituted a scheme to defraud is supported by sufficient evidence to satisfy the familiar standards of appellate review.[6] Analyzing the facts, the district judge wrote:

" . . . In the cigarette mail order business, the scheme to defraud is ready-made because of the differences in the tax structure on cigarettes between the various states. The State of North Carolina has a very low cigarette tax rate and the State of Florida has a comparatively higher cigarette tax rate. Consequently, if Florida residents can purchase cigarettes in North Carolina without paying the Florida State cigarette tax on their purchases, they are able to obtain cigarettes at a substantial savings over the local price, thereby defeating the Florida State cigarette tax. Consequently, those in the cigarette business in North Carolina are able to offer cigarettes for sale at a much lower

pository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

**4.** The Jenkins Act, 15 U.S.C. § 376, provides in part:

"(a) Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes, to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such a sale or transfer and shipment, shall—

"(1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if · any), and the address of his principal place of business and of any other place of business; and

"(2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment.is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof."

**5.** Fla.Stat.Ann. § 210.02(1)(a) and (6) (Supp. 1972). In contrast to Florida's levy of seventeen cents, North Carolina taxes a pack of cigarettes at two cents. N.C.Gen.Stat. § 105–113.5 et seq. (1972).

**6.** "In considering the sufficiency of the evidence we do not determine whether it convinces us of guilt beyond a reasonable doubt, but only that the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt. . . . The verdict . . . must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt. . . ." *United States v. Sherman*, 421 F.2d 198, 199–200 (4th Cir. 1970).

price than the local selling price in Florida."

■ Speaking of a prosecution for mail fraud, Mr. Justice Holmes aptly observed: "Intent may make an otherwise innocent act criminal, if it is a step in a plot." *Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916). Although using the mails for the interstate sale of cigarettes or other lawful merchandise is in itself an innocent act, it becomes fraudulent when the seller couples it with an intent to transact business in a way that enables his customers to escape taxes by dealing with him. Then it becomes, as the legislative history of the Jenkins Act notes, a form of tax evasion.[7] There is no doubt that Brewer intended to sell cigarettes, free of Florida taxes, to Florida residents. She offered no evidence that she could buy cigarettes at a lower wholesale price than Florida retailers, yet the success of her venture depended on her underselling Florida competitors whose price necessarily included the Florida tax. Her willful decision not to comply with the Jenkins Act furnishes additional evidence of her intent to ship cigarettes from North Carolina to Florida, knowing that Florida could not readily detect the sales and collect the taxes that were owed by her customers.

■ It is immaterial that Brewer made no misrepresentations to either Florida residents or tax officials, for it is no defense that the papers sent through the mail are innocent in themselves if they are part of a scheme to defraud. *Parr v. United States*, 363 U.S. 370, 390, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960).

Nor is it a defense that she herself owed no tax. It is enough that she knowingly devised a scheme that would enable Florida residents to obtain cigarettes without declaring them for taxation. One who consciously aids another in defrauding a government of taxes is a participant in the illicit enterprise. *Cf. United States v. Johnson*, 319 U.S. 503, 515, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

We conclude, therefore, that both the facts and the law warrant the district court's ruling that Brewer devised a scheme to defraud. This establishes the first element of the offense of mail fraud.

## II

■ Brewer asserts that the government also failed to prove the second element of the offense, use of the mails for the purpose of executing the scheme to defraud. She acknowledges that she used the mails to advertise, furnish order forms, receive orders and payments, and ship cigarettes. But she contends that her only wrongdoing, failure to file reports with the Florida tax officials, did not involve the use of the mails. Brewer relies on *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); and *Kann v. United States*, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), to support her argument that the mails were not used for the purpose of executing her scheme. But in each of these cases, the mails were used after completion of the fraud and did not affect the success of the scheme.[8]

---

7. "The [Jenkins Act] was enacted for three major reasons:

"(1) The large and increasing loss of revenue to the States caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce to consumers;

"(2) The discrimination caused by this evasion against sellers of cigarettes in States having a higher tax than the tax of the seller States; and

"(3) The fact that this evasion was accomplished through the use of the United States mail."

S.Rep. No. 1147, 84th Cong., 1st Sess., U.S. Code Cong. and Admin.News 2883 (1955), quoting from the report of the Committee on Ways and Means.

8. In *Maze*, *Kann*, and the relevant charges at issue in *Parr*, the mailings relied on by the government were made by individuals other than the defendants after the fraudulent schemes were completed. The defendants had cashed fraudulently obtained checks (*Kann*) or had used credit cards for improper purposes (*Parr*) or had used stolen credit cards (*Maze*) to obtain cash, merchandise or serv-

■ Here, in contrast, using the mails was an integral part of the scheme to defraud, since it was the only means of communication between Brewer and her customers. Referring to this aspect of the case, the district judge wrote:

" . . . The obvious and easiest way to conclude these transactions was, and is, by use of the United States mails. Thus, in this manner, cigarettes are being purchased in North Carolina, transported to Florida through the United States mails and consumed in the State of Florida by Florida residents in such a manner as to make it practically impossible for the taxing authority of the State of Florida to collect the appropriate cigarette taxes legally due and owing to Florida."

It is of no consequence that Brewer's use of the mails did not involve sending a letter to the state tax officials, for the victim need not be the recipient of the material that is mailed. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. International Term Papers, Inc.*, 477 F.2d 1277, 1279 (1st Cir. 1973) (dictum). When, as here, the mails play a significant part in a defendant's fraudulent conduct, it is apparent that they are used for the purpose of executing the scheme within the meaning of § 1341. *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Green*, 494 F.2d 820, 826 (5th Cir. 1974). We hold, therefore, that the evidence was sufficient to prove the second element of the offense.

### III

Finally, we consider Brewer's argument that at most she could only be convicted of a misdemeanor under the Jenkins Act. She contends that before the passage of this Act her conduct would not have violated any law and certainly not the mail fraud statute. Relying on the reference to the use of the mails in the legislative history of the Act, she seeks to demonstrate congressional intention to make the Act the exclusive federal statute governing the interstate sale of cigarettes by mail.

■ The plain language of the Jenkins Act, its legislative history, and judicial precedent refute this argument. The Act does not mention use of the mails. It requires the seller to furnish information about the interstate sale of cigarettes, regardless of the means of communication and delivery. For example, orders solicited by phone and delivered by truck must also be reported. The text of the Act does not indicate that it should be construed as a specialized mail fraud law preempting the general mail fraud statute.

The Act was passed to help the states collect cigarette taxes and to stem the loss of state revenues, estimated to be $40,000,000 annually.[9] Contrary to Brewer's assertion, Congress recognized before enacting the Jenkins Act that interstate sales of cigarettes could be a form of tax evasion when the transactions were accomplished by practices that deliberately enabled the purchasers to escape taxes. Indeed, the primary reason for the Act was a desire to deal with "[t]he large and increasing loss of revenue to the States caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce."[10] This legislative history indicates that the Act was passed to cope with existing illegali-

---

ices. The banks or the businesses which provided the services then used the mails to settle their accounts with the credit card owners or the banks on which the checks were drawn. The Court held that in these circumstances the mailings were not sufficiently related to the defendants' schemes to support a finding that the mails were used "for the purpose of executing [the] scheme to defraud" within the terms of § 1341. *Maze*, 414 U.S. at 402, 94 S.Ct. 645; *Parr*, 363 U.S. at 370, 80 S.Ct. 1171; *Kann*, 323 U.S. at 94, 65 S.Ct. 148.

Here, the government does not base any part of its case on the use of the mails to clear the purchasers' checks after Brewer cashed them.

**9.** S.Rep. No. 644, 81st Cong., 1st Sess., U.S. Code Cong. and Admin.News 2158, 2159 (1949).

**10.** S.Rep. No. 1147, 84th Cong., 1st Sess., U.S. Code Cong. and Admin.News 2883 (1955). *See* note 7, *supra*.

ty rather than to define a new kind of fraud.

■■■ Brewer, therefore, may be convicted of mail fraud even though, by her own admission, she also violated the Jenkins Act. "The mail fraud statute continues to remain an important tool in prosecuting frauds in those areas where legislation has been passed more directly addressing the fraudulent conduct." *United States v. Maze*, 414 U.S. 395, 406, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974) (Burger, C. J., dissenting). When the same conduct violates overlapping statutes, the prosecutor can elect to charge the defendant under either. Thus, the mail fraud statute has been employed to prosecute persons whose fraud broke other federal laws. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954) (Interstate Transportation of Stolen Property); *Edwards v. United States*, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957 (1941) (Securities Act); *United States v. Green*, 494 F.2d 820 (5th Cir. 1974) (Truth in Lending Act); *Bozel v. Hudspeth*, 126 F.2d 585 (10th Cir. 1942) (Federal Trade Commission Act). Furthermore, prosecution under the mail fraud statute is not barred because its maximum penalty is greater than that prescribed by the Jenkins Act. *Cf. United States v. Gilliland*, 312 U.S. 86, 95, 61 S.Ct. 518, 85 L.Ed. 598 (1941); *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 345 F.2d 964, 967 (D.C.Cir. 1965).

■■ Alternatively, even if conduct such as Brewer's had been lawful before the Jenkins Act, her claim that she can be prosecuted only under that Act rests on a faulty premise. The use of the mails by persons selling cigarettes in interstate commerce undoubtedly was one of the factors that moved Congress to help states collect their taxes.[11] But the Act, as we have noted, does not punish those who use the mails to sell ciga-

rettes in interstate commerce. Instead, it regulates this business by requiring the disclosure of information helpful to the states. *United States v. Morris*, 516 F.2d 959 (4th Cir. 1975); *United States v. E. A. Goodyear, Inc.*, 334 F.Supp. 1096 (S.D.N.Y. 1971). Its constitutional basis is the commerce clause. *Consumer Mail Order Association of America v. McGrath*, 94 F.Supp. 705 (D.D.C. 1950), aff'd 340 U.S. 925, 71 S.Ct. 500, 95 L.Ed. 668 (1951).

Brewer would have violated the Jenkins Act even if she had traded by means other than the mails, but advertising by radio, for example, would have exposed her and been self-defeating. The mails enabled her to transact her business surreptitiously, obtaining orders that she dared not openly solicit. Thus, she used the mails to circumvent the Act and avoid its regulatory provisions as part of her scheme to profit from the differential in Florida and North Carolina cigarette taxes.

The mail fraud statute provides a jurisdictional base for federal law enforcement. *See* 1 Working Papers of the National Commission on Reform of Federal Criminal Laws 33–67 (1970). But this is not the statute's sole function. It also prevents the post office from being used as an instrument of crime. *Durland v. United States*, 161 U.S. 306, 314, 16 S.Ct. 508, 40 L.Ed. 709 (1896). We conclude, therefore, that even if conduct such as Brewer's were lawful before the Jenkins Act, her use of the mails to escape regulation added a different element and a new dimension to her failure to comply with the Act.

In sum, we hold the evidence sufficient to show that Brewer used the mails to execute a scheme to defraud and that the government could choose to prosecute her under the mail fraud statute.

Affirmed.

---

11. "[C]ertain individuals and organizations are using the United States mails to circumvent State laws. Moreover, advertisements of organizations specializing in this business cite the availability and use of the United States mails as proof of legality of their operation. Accordingly, your committee believes that respect for the laws of the sovereign States will be furthered by the passage of this bill and that the public interest will be served by eliminating any inference that the Federal Government approves of the circumventing of State laws." S.Rep. No. 644, 81st Cong., 1st Sess., U.S.Code Cong. and Admin.News 2158, 2159–60 (1949).