**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles SHERMETARO,**
**Defendant-Appellant.**

No. 79–5148.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1980.
Decided June 16, 1980.

Sharon-Lee Edwards (Court-Appointed), George Edwards, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Michael C. Leibson, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before KEITH and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

The conviction of five Detroit osteopathic physicians for receiving kickbacks in connection with the federal Medicare and Medicaid programs has been affirmed by this court in *United States v. Tapert, et al.,* 625 F.2d 111 (6th Cir. 1980). The kickbacks were found to have been paid by Titan Laboratories or its affiliates, including Associated Physicians Services Company. Reference is made to the opinion of this court in *Tapert* for pertinent details.

In the present case appellant Charles Shermetaro was found guilty by a jury and convicted of conspiring to defraud the United States by obstructing and hindering the Internal Revenue Service in its lawful duty to ascertain, compute, assess and collect federal income taxes owed by Titan Laboratories in violation of 18 U.S.C. § 371.[1] Then Chief District Judge Cornelia G. Kennedy, now a judge of this court, sentenced Shermetaro to imprisonment of one year and a day.

Appellant urges reversal on two grounds: 1. The Government failed to establish sufficient evidence of defendant's specific intent to defraud the United States by obstructing the Internal Revenue Service in its duty to ascertain and collect taxes of Titan Laboratories; and (2) the indictment failed to charge an offense under 18 U.S.C. § 371 in that § 371 was not intended to cover conspiracies involving violations of Internal Revenue laws or conspiracies to defraud the Internal Revenue Service.

On the record in this case, we find both of these contentions to be without merit and affirm the conviction.

## I

The indictment made the following charges with respect to Shermetaro:

## INDICTMENT

### THE GRAND JURY CHARGES:

At all times pertinent to this Indictment:

1. The United States Department of the Treasury through the Internal Revenue Service (IRS) is the federal agency having responsibility pursuant to federal law for the ascertainment, computation, assessment and collection of the federal income tax.

2. IRS form 941 entitled "Employers Quarterly Federal Tax Return" was required to have been filed quarterly by an employer who has employees subject to the federal employee tax withholding system. This form was required to contain the names of all such employees who were actually employed during the quarterly period involved.

3. IRS form 1120 entitled "U. S. Corporation Income Tax Return" was the form which corporations were required to use when filing their federal corporate income tax returns.

4. A "medical laboratory" was a private business organized for purposes including that of conducting examinations of blood and other bodily substances at the request of physicians and other professionals who treated individual patients.

---

1. § 371. Conspiracy to commit offense or to defraud United States

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

5. The term "Laboratory business" as used herein, means the practice of drawing blood and other bodily fluid specimens which are taken from medical patients at a medical clinic or doctor's office and then transmitted to a medical laboratory for analysis.

6. It was illegal and unethical under state and federal laws and regulations as well as private rules of ethics for physicians, for a doctor to receive a rebate, kick-back, gratuity or thing of value in return for the doctor referring his laboratory business to a particular laboratory.

7. Under federal laws and regulations it was illegal for any provider of services reimbursed under the federal medicare or medicaid programs to accept or for a laboratory to pay a rebate, kick-back, gratuity or thing of value in return for a provider of medical services referring his laboratory business to a particular medical laboratory.

8. The federal "medicaid" program was created to assist participating states in providing medical services, including medical laboratory services, to families with dependent children and to aged, blind and totally disabled individuals whose incomes and resources were insufficient to meet the costs of necessary medical services.

9. The federal "medicare" program was created to provide health insurance for the aged, including insurance for medical laboratory services.

10. Media Technology, Inc., was a plastics manufacturing firm incorporated and owned by John Leeming and Henry Ellis.

11. Titan Laboratories, Inc. [hereinafter referred to as Titan Lab] was a medical laboratory incorporated in March 1974, funded in large part with money from Media Technology, Inc. Titan Lab was owned initially by John Leeming, Henry Ellis and others. Titan Lab's primary places of business prior to May, 1976, were in the cities of Detroit, Southfield and Royal Oak, Michigan.

12. Sanford Hoskow, beginning in approximately January, 1976 worked first as a salesman and then as a vice-president, director and salesman for Titan Lab.

*    *    *    *    *    *

13. Charles Shermetaro, beginning in approximately March 1975 until approximately July 1975 worked as a salesman, a director of operations and as a corporate vice-president to Titan Lab.

*    *    *    *    *    *

19. Associated Physicians Services Co. [hereinafter "Associated Physicians"] was formed in July 1976 as an assumed named of Charles Shermetaro. Associated Physicians Services Co. operated out of Titan Lab.

*    *    *    *    *    *

THE GRAND JURY FURTHER CHARGES:

**COUNT ONE**

1. That from on or about January 1, 1974, up to and including December 31, 1977, in the Eastern District of Michigan, and elsewhere, JOHN LEEMING, HENRY ELLIS, and CHARLES SHERMETARO defendants herein, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together with each other and with persons known and unknown to the grand jury, to defraud the United States, the United States Department of Treasury, and the Internal Revenue Service by obstructing and hindering the Department of the Treasury and the Internal Revenue Service in its lawful duty to ascertain, compute, assess and collect federal income taxes of certain entities including but not limited to Titan Laboratories, Inc.,  . . .

2. It was a further part of said conspiracy that defendants JOHN LEEMING, HENRY ELLIS, CHARLES SHERMETARO, . . . would and did agree to falsify the books and records of Titan Lab which were the basis for preparation of various documents required to be submitted to IRS including . . . IRS form 1120 and further, that defendants agreed to falsify such records in order to conceal and cover-up various payments made as kickbacks to doctors and medical clinics which submitted blood specimens for analysis to Titan Lab.

3. It was further part of this conspiracy that payments were recorded on the books of Titan Lab as wages of Titan Lab employees when in fact such payments were not for Titan Lab employees but were made to employees of doctors for the benefit of doctors employing those persons and as a kickback for the blood specimens submitted to Titan Lab for analysis by those doctors.

4. It was a further part of said conspiracy that payments of money to doctors who submitted blood specimens to Titan Labs for analysis were entered in the books of Titan Lab as consulting fees to doctors when in fact those payments were kickbacks paid to doctors in return for their submission of blood specimens to Titan Lab for analysis.

\*   \*   \*   \*   \*   \*

6. It was a further part of said conspiracy that kickbacks to doctors who submitted blood specimens to Titan Lab for analysis were entered in the books and records of Titan Lab as commission payments to Associated Physicians Services Company, . . . which entities were established only for the purpose of passing kickbacks from Titan Lab to doctors.

\*   \*   \*   \*   \*   \*

8. It was a further part of said conspiracy that John Leeming, Henry Ellis, Charles Shermetaro did establish Associated Physicians for the purpose of negotiating and paying kickbacks to doctors doing business with Titan Lab.

9. It was a further part of said conspiracy that the following roles were carried out by individuals in regard to Associated Physicians.

 a. John Leeming did organize and direct the activities of Associated Physicians and its relationship to Titan Lab.

 b. Henry Ellis signed checks drawn on the bank account of Titan Labs payable to Associated Physicians.

 c. Charles Shermetaro operated Associated Physicians and negotiated kickback arrangements with doctors on behalf of Titan Lab and delivered kickbacks to doctors.

10. It was a further part of said conspiracy that Associated Physicians negotiated kickbacks to doctors in return for submission of blood specimens to Titan Lab, which said kickback payments were in the following forms.

 a. Checks drawn on the account of Associated Physicians and delivered to doctors on a regular basis.

 b. Payments of the wages of employees in doctors offices by means of checks drawn on the bank accounts of Titan Lab and Associated Physicians.

11. It was a further part of said conspiracy that kickback payments negotiated by Associated Physicians resulted in the following fraudulent entries being made in the books and records of Titan Lab:

\*   \*   \*   \*   \*   \*

 a. Checks written to Associated Physicians were entered as commission.

12. It was a further part of said conspiracy that John Leeming, Henry Ellis, and Charles Shermetaro did negotiate and deliver or cause to be delivered kickbacks to doctors doing business with Titan Lab.

13. It was a further part of said conspiracy that said kickback payments referred to in paragraph 12, above, were falsely recorded in the books, records, and IRS Forms of Titan Lab as commissions, directors fees, consulting fees, rent, and wages.

\*   \*   \*   \*   \*   \*

25. It was a further part of said conspiracy that defendant Charles Shermetaro, among other persons, would receive "bonus" checks from Titan Lab to cover any tax liability incurred by them in the course of paying kickbacks on behalf of Titan Lab.

The indictment also charged 51 overt acts. Among the overt acts charged are numerous payments by Titan to physicians and other individuals and the filing of various forms with the Internal Revenue Service. Shermetaro and the other defendants were charged with falsifying tax records to conceal kickbacks and obtain fictitious allowances for business expenses; the kickbacks appeared on Titan's books as wages

of employees, consulting fees to doctors and commission payments to Associated Physicians Services Company (the trade name under which Shermetaro operated).

## II

Shermetaro concedes that the Government produced evidence of his intent to participate in the kickback scheme but contends that the proof is insufficient to establish his intent to defraud the United States regarding income taxes.

John Leeming, President of Titan, testified that he employed Shermetaro as a salesman in 1974. Shermetaro later became a vice president and general manager of Titan. During his first few months with Titan, Shermetaro brought in three new accounts with doctors, to whom monthly payments were made by Titan checks, carried on Titan's books as fictitious "consulting fees." In 1975, Leeming became concerned with the "paper trail" left by paying the kickbacks with Titan's checks. Shermetaro then organized Associated Physicians Services Company which the indictment charges was an assumed name of Shermetaro and operated out of Titan. Kickbacks then were funneled to recipients through the fictitious company. Leeming stated that one of the main considerations in carryout the kickback scheme was the tax consequences.

Leeming testified that Shermetaro falsified expense vouchers so that he, Shermetaro, could obtain tax free income; that Leeming specifically discussed with Shermetaro the tax write offs of the kickback payments; that Leeming paid monies to Shermetaro to defray any taxes incurred by Shermetaro as a result of his operation of Associated Physicians; that Leeming discussed with appellant that he should carry certain kickback payments as "rent" on the books of Associated Physicians; that Shermetaro continued to receive false expense checks even after Associated Physicians was formed; that Shermetaro was given "loans" from Titan with the understanding that the loans were not to be repaid and eventually would be "written off" by Titan; and that money paid to Associated Physicians was carried falsely on Titan's books as consulting fees and deducted on its federal tax return.

William Bengela, an IRS agent, testified concerning Titan's 1975 tax return and Shermetaro's personal tax return, with particular attention to Schedule C detailing the business expenses and deductions claimed for Associated Physicians. He stated that all of Titan's checks to Associated Physicians were listed as consulting fees or commissions and that Shermetaro's Schedule C showed deductions for consulting fees for payments by Associated Physicians to various doctors. He testified that approximately $27,000 was paid by Titan to Associated Physicians during 1975.

Shermetaro challenges the reliability of Leeming's testimony because he was a principal testifying as a Government witness under an agreement that charges against him under the indictment in this case would be dismissed. The short answer to this contention is that the credibility of Leeming was determined when the jurors believed him and returned a guilty verdict against Shermetaro.

The Supreme Court held in *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser* also recognizes that "[p]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collation of the circumstances'." *See also Marroso v. United States*, 331 F.2d 601 (5th Cir.), *cert. denied*, 379 U.S. 899, 85 S.Ct. 185, 13 L.Ed.2d 174 (1964).

■ It is well established that to sustain a conviction for conspiracy, the defendant must know the purpose of the conspiracy, but not necessarily the full scope thereof, the detailed plans, operation, membership, or even the purpose of other members in the conspiracy. *See United States v. Cham-*

*bers*, 382 F.2d 910 (6th Cir. 1967); *United States v. Luxenberg*, 374 F.2d 241 (6th Cir. 1967).

■ If a tax evasion motive plays any part in a scheme, the offense can be made out even though the scheme may have other purposes such as the concealment of other crimes. *See Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). *See also United States v. DeNiro*, 392 F.2d 753 (6th Cir.), *cert. denied*, 393 U.S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97 (1968).

■ The record is replete with evidence of appellant's knowledge of the tax effects of the sham bookkeeping entries of Titan. Appellant took corresponding deductions on the books of Associated Physicians, transactions which consistently point to a tax avoidance motive.

Upon a thorough review of the record, we conclude that there is substantial evidence in the record to establish the specific intent of defendant to defraud the United States regarding federal income taxes.

### III

Appellant further contends that the indictment failed to charge an offense under 18 U.S.C. § 371 and that § 371 was not intended to cover conspiracies involving violation of the Internal Revenue laws or conspiracies to defraud the Internal Revenue Service. Appellant argues that 18 U.S.C. § 371 is preempted by Title 26 of the United States Code. It is asserted that by use of the conspiracy statute, the Government was attempting to increase penalties in the event of conviction, beyond the intent of Congress.

18 U.S.C. § 371 is a broad and general conspiracy statute:

If two or more persons conspire either to commit *any* offense against the United States, or to defraud the United States, or *any* agency thereof in *any* manner or for *any* purpose . . . . (Emphasis added.)

This language is sufficiently broad on its face to include the offense of which Shermetaro was found guilty. Many cases have upheld convictions of conspiracy to defraud the Treasury Department and Internal Revenue Service. This Circuit did so in *United States v. Fruehauf Corp.*, 577 F.2d 1038 (6th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). *See also United States v. Diez*, 515 F.2d 892 (5th Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976); *United States v. Lowder*, 492 F.2d 953 (4th Cir.), *cert. denied*, 419 U.S. 1092, 95 S.Ct. 685, 42 L.Ed.2d 685 (1974); *United States v. Kessler*, 449 F.2d 1315 (2d Cir. 1971); *United States v. Sams*, 340 F.2d 1014 (3d Cir.), *cert. denied*, 380 U.S. 974, 85 S.Ct. 1336, 14 L.Ed.2d 270 (1965); *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), *cert. denied*, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958); *Benatar v. United States*, 209 F.2d 734 (9th Cir.), *cert. denied*, 347 U.S. 974, 74 S.Ct. 786, 98 L.Ed. 1114 (1954); *Schino v. United States*, 209 F.2d 67 (9th Cir. 1952), *cert. denied*, 347 U.S. 937, 74 S.Ct. 627, 98 L.Ed. 1087 (1954).

In *Dennis v. United States*, 384 U.S. 855, 860–61, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966), the Court made this comment with respect to the range of cases covered by 18 U.S.C. § 371:

Nor can it be concluded that a conspiracy of the described nature and objective is outside the condemnation of the specific clause of § 371 relied upon in the indictment, which charges a conspiracy "to defraud the United States, or any agency thereof in any manner or for any purpose." It has long been established that this statutory language is not confined to fraud as that term has been defined in the common law. It reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government," *Haas v. Henkel*, 216 U.S. 462, 479, [30 S.Ct. 249, 253, 54 L.Ed. 569], quoted in *United States v. Johnson*, 383 U.S. 169, 172 [86 S.Ct. 749, 751, 15 L.Ed.2d 681]. See also, *Lutwak v. United States*, 344 U.S. 604 [73 S.Ct. 481, 97 L.Ed. 593]; *Glasser v. United States*, 315 U.S. 60, 66 [62 S.Ct. 457, 463, 86 L.Ed.

680]; *Hammerschmidt v. United States*, 265 U.S. 182, 188 [44 S.Ct. 511, 512, 68 L.Ed. 968]. Cf. Goldstein, Conspiracy to Defraud the United States, 68 Yale L.J. 405, 414–441, 455–458 (1959). (Footnote omitted.)

*See also United States v. Levinson*, 405 F.2d 971 (6th Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969).

That such conspiracies are within the scope of § 371 is demonstrated by the language of Title 26 itself. 26 U.S.C. § 6531 reads, in pertinent part:

### § 6531. Periods of limitation on criminal prosecutions

No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years—

(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;

\* \* \* \* \* \*

(8) *for offenses arising under section 371 of Title 18* of the United States Code, where the object of the *conspiracy* is to attempt in any manner to evade or defeat any tax or the payment thereof. (Emphasis added.)

In this section, a part of Subchapter D— Periods of Limitations in Judicial Proceedings—Congress explicitly evidenced its intention that conspiracies to defraud the Internal Revenue Service, as an agency of the United States under 26 U.S.C. § 6531(1), are indictable offenses under 18 U.S.C. § 371.

In support of his argument, appellant cites *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), and *United States v. Henderson*, 386 F.Supp. 1048 (S.D. N.Y.1974).

*Spies* does not support defendant's contention. That opinion holds only that the misdemeanor of willful omission to make a return and pay a tax, 26 U.S.C. § 145(a) of the Revenue Act of 1936, does not constitute a violation of 26 U.S.C. § 145(b) which makes it a felony to attempt willfully to evade or defeat a tax. The case does not deal with the issue of Title 18/Title 26 preemption.

We note that the language referred to from *Spies* is in the following context:

A felony may, and frequently does, include lesser offenses in combination either with each other or with other elements. We think it clear that this felony may include one or several of the other offenses against the revenue laws. But it would be unusual and we would not readily assume that Congress by the felony defined in § 145(b) meant no more than the same derelictions it had just defined in § 145(a) as a misdemeanor. Such an interpretation becomes even more difficult to accept when we consider this felony as the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency. 317 U.S. at 497, 63 S.Ct. at 367.

We decline to read this language as indicating a carte blanche rejection of charges of violations of other sections of the United States Code which arise from revenue related laws.

In *Henderson*, a district court opinion unreviewed by the Second Circuit, the court held that the mail fraud statute, 18 U.S.C. § 1341, was not intended to reach income tax evasion.

Even if *Henderson* were to stand for as broad a proposition as appellant impresses upon this court, we note that it failed to follow the trend of the case law on the subject up to that time, *see, e. g., United States v. Brewer*, 528 F.2d 492 (4th Cir. 1975); *United States v. Mirabile*, 503 F.2d 1065 (8th Cir. 1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); *United States v. Flaxman*, 495 F.2d 344 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

The facts of the present case are readily distinguishable from those in *Henderson* and *Spies*. We are not concerned with intra-revenue law multiple charges nor the "pyramiding" of potential penalties. Section 371 does not have as limited a scope and purpose as the *Henderson* court found in the mail fraud statutes. While *Henderson* could find no cases using the mail fraud statutes in the context then under consideration, § 371 has been used on numerous occasions to convict a conspirator in a tax context, as demonstrated by the cases hereinabove cited.

We are cited to no reported decision following *Henderson*.

In *United States v. Tarnopol*, 561 F.2d 466 (3d Cir. 1977), the court took note of the contention that § 371 is preempted by the Internal Revenue Code and cited *Spies* and *Henderson*, but held that the evidence was insufficient to support the conspiracy charge.

The Second Circuit, in *United States v. Mangan*, 575 F.2d 32, 49 (2d Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978), mentioned *Henderson* but distinguished it on the ground that *Henderson* involved a taxpayer who violated the Internal Revenue Code with respect to his own tax liability, while the fraud in *Mangan* did not relate to the defendant's own tax liability. However, *Mangan* also found it unnecessary to decide the preemption issue, leaving for another day the question whether "this court would follow *Henderson* on its facts." 575 F.2d at 49.

In *United States v. Weatherspoon*, 581 F.2d 595, 599 (7th Cir. 1978), the court, in the process of distinguishing *Henderson*, included a footnote noting the Ninth Circuit's express repudiation of *Henderson* in *United States v. Miller*, 545 F.2d 1204 (9th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977), wherein the Ninth Circuit stated at footnote 17:

Again, after briefs had been filed but prior to oral argument, appellant's counsel cited to us the case of *United States v. Henderson*, 386 F.Supp. 1048, 1050–1054 (S.D.N.Y.1974) for the proposition that the mail fraud statute was not intended by Congress to apply to a scheme to defraud the United States in an attempt to evade the payment of taxes. *Henderson* is inconsistent with at least three other circuit court cases which have held that the mailing of false *state* tax returns constituted a violation of 18 U.S.C. § 1341. *See, United States v. Brewer*, 528 F.2d 492 (4th Cir. 1975); *United States v. Mirabile*, 503 F.2d 1065, 1066–1067 (8th Cir. 1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); *United States v. Flaxman*, 495 F.2d 344, 348–349 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974). We reject the holding in *Henderson*, 545 F.2d at 1216.

We conclude that there is no merit in the contention of appellant that Congress has preempted the field of federal income tax law in Title 26 so as to prevent prosecutions for conspiracy to violate those laws pursuant to 18 U.S.C. § 371. We hold that the indictment at bar stated an offense cognizable under 18 U.S.C. § 371.

The judgment of the district court is affirmed.