**UNITED STATES of America, Appellee,**

v.

**Faggart Daniel MURR, III, Appellant.**

**No. 81–5030.**

United States Court of Appeals,
Fourth Circuit.

Argued April 1, 1982.

Decided June 17, 1982.

Certiorari Denied Nov. 1, 1982.
See 103 S.Ct. 307.

Daniel L. Crandall, Roanoke, Va., for appellant.

William P. Sellers, IV, Asst. U. S. Atty., Roanoke, Va. (John P. Alderman, U. S. Atty., on brief), for appellee.

Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge:

A federal jury in Roanoke, Virginia convicted Faggart Daniel Murr, III of mail fraud, 18 U.S.C. § 1341, for allegedly sending through the mails a petition for relief under 42 U.S.C. § 1983 as well as two accompanying affidavits which contained false representations. Murr appeals the conviction contending that there was insufficient evidence to support a conviction for mail fraud. We affirm.

I

In May 1980, appellant was incarcerated in the Roanoke, Virginia city jail awaiting trial (we are told in argument) on charges of kidnapping his former wife. On or about June 5, 1980 he mailed a completed form petition for § 1983 relief to the clerk of the United States District Court for the Western District of Virginia. The petition named as defendant Bruce Allen Palmer, a deputy sheriff and guard at the jail. The petition charged that Palmer was destroying Murr's mail and that Palmer had threatened to kill Murr if they ever met on the street. Accompanying the petition were affidavits from John A. Branscom and Edward L. Derrick, dated May 30 and May 29 respectively, stating that each affiant had heard Palmer make the threats against Murr.[1] Branscom and Derrick were incarcerated in the same pod of the jail as was Murr.

On June 3, 1980, after signing the affidavits, Branscom and Derrick had second thoughts and asked to speak to Captain James F. Brabham, Chief Corrections Officer and Chief Deputy of the Roanoke City Sheriff's Department. In a conversation that day, and in sworn, taped statements made the following day, Branscom and Der-

---

1. The written statements described themselves as affidavits taken under the penalty of perjury under 28 U.S.C. § 1746. Whether they in fact meet the requirements of § 1746 is of no moment here.

rick admitted that the affidavits accompanying Murr's § 1983 petition were false. They stated that Murr had actually written the affidavits and that they only signed them. Branscom and Derrick testified at Murr's trial that they had agreed to sign the affidavits in exchange for a share of the recovery from the lawsuit.

Several days later, Murr was indicted for mail fraud for devising a scheme to defraud Palmer and companies insuring the Roanoke Sheriff's Department and sending through the mail a "letter containing documents dated and signed May 29, 1980, May 30, 1980, and June 1, 1980 ... relative to prisoners filing complaints under the Civil Rights Act, Title 42, United States Code, Section 1983 (1983 Form), knowing said documents to contain false representations." The documents were the § 1983 complaint signed May 29, 1980 and the statements of Branscom and Derrick signed May 30 and May 29, which last two documents were copied by Murr on June 1, 1980. Captain Brabham and prisoners Branscom and Derrick testified for the government at trial. Physical evidence included the allegedly false § 1983 petition and the affidavits.

## II

On appeal, Murr's sole argument is that the government presented insufficient evidence to provide "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged ..." In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). He relies heavily on the fact that both of the prisoner affiants were convicted felons and that each became an inmate trusty after the incident. Furthermore, Murr notes that the trial judge stated that if he were sitting as a juror, he would not have voted to convict because he doubted the credibility of the two prisoner affiants who testified for the government. Additionally, appellant argues that because the § 1983 petition did not contain any request for monetary damages, it cannot be considered a scheme to defraud.

To obtain a conviction under 18 U.S.C. § 1341, the prosecution must prove two essential elements—(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); United States v. Brewer, 528 F.2d 492, 494 (4th Cir. 1975). While utilization of the mail fraud statute to prosecute the filing of a false § 1983 petition is apparently a case of first impression, a survey of recent mail fraud prosecutions from this circuit alone shows that the statute has had varied use. E.g., United States v. Mandel, 591 F.2d 1347 (4th Cir.), vacated 602 F.2d 653 (1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980) (bribing a State official to take an act); United States v. Caldwell, 544 F.2d 691 (4th Cir. 1976) (bribing a State official to violate a statutory duty); Brewer, 528 F.2d 492 (aiding evasion by others of Florida use tax on cigarettes). The common element of such cases is that the accused attempted to use the mail as an instrument of his crime. Mandel, 591 F.2d at 1358; Brewer, 528 F.2d at 498.

It is apparent to us that the elements of the statutory offense have been demonstrated here. There is not even a contention that Murr's scheme must have necessarily depended on the mail for its accomplishment. As we said in Caldwell, "It matters not, as defendant argues, that payment could have been accomplished in some other manner—defendant suggests by dog sled—or that the bank routinely employed the mails for its countless other routine transactions. The use of the mails need not in and of itself be fraudulent to constitute an offense under the statute." 544 F.2d at 696. Here, Murr's placing of the § 1983 petition in the mail with its accompanying papers was a sufficient connection with the mail system to satisfy the statute.

Turning to the question of whether there existed a scheme to defraud Palmer or the Sheriff's Department's insurance carrier, appellant does not contend that intentionally filing a false § 1983 petition is

not within the statute. Instead, he argues that because his petition did not ask for monetary damages, there could not have been in the words of the statute, a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses ..." 18 U.S.C. § 1341. While it is apparently not finally settled among the courts as to whether a pecuniary benefit must be part of a mail fraud scheme,[2] the issue is present here only as to whether or not it existed, not whether or not it is necessary. As noted above, both of Murr's fellow prisoners testified that the appellant had offered to split the recovery from the lawsuit with them in exchange for signing the affidavits. Furthermore, the appellant himself testified that when filing the § 1983 petition, he thought that a prayer for declaratory relief was for an award of money in whatever amount the court would award him. Evidence of a mail fraud scheme is not limited to the content of the material which passed through the mails. Actually, the mailed material may be totally innocent, and yet it still may be found that a scheme to defraud exists. *Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); *Caldwell*, 544 F.2d at 696. Here, the proof of a monetary aspect to the scheme, even if not provided by the § 1983 petition, was provided by the appellant's testimony and that of his fellow prisoners.

█ Finally, appellant argues that the government presented insufficient evidence because the two fellow prisoners, Branscom and Derrick, were not credible witnesses.

Murr places particular emphasis on statements by the trial judge doubting the witnesses' credibility. Notwithstanding these doubts, the trial judge refused to exercise his power to grant acquittal after the jury verdict. As an appellate court, we are in a worse position to judge the credibility of witnesses than was the trial judge. There is nothing in the record of which we are aware which would cause us to reject the two prisoners' testimony as a matter of law. It is certainly not inherently incredible.

█ We are thus of opinion that there was sufficient evidence to support the conviction of mail fraud. Accordingly, the judgment of the district court is

AFFIRMED.

**2.** In *Horman v. United States*, 116 F. 350 (6th Cir.), cert. denied, 187 U.S. 641, 23 S.Ct. 841, 47 L.Ed. 345 (1902), the court, in upholding a blackmail by mail conviction, construed a predecessor of the current mail fraud statute to have a broad meaning which would allow conviction for mail fraud on the finding of a wrongful purpose short of trickery or cunning. The Supreme Court, in reversing a conviction for urging resistance to the draft by use of the mails, subsequently limited *Horman* by saying that it "should be confined to pecuniary or property injury inflicted by a scheme to use the mails for the purpose.... [The mail fraud statute's] construction in the *Horman Case* cannot be used as authority to include within the legal definition of a conspiracy to defraud

the United States a mere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it." *Hammerschmidt v. United States*, 265 U.S. 182, 188–89, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). The Eighth Circuit has in terms construed *Hammerschmidt* not to limit the mail fraud statute to situations involving monetary or property loss. In *United States v. States*, 488 F.2d 761, 765 (8th Cir. 1973), cert. denied, 417 U.S. 909, 950, 94 S.Ct. 2605, 3078, 41 L.Ed.2d 212, 671 (1974), the court applied the mail fraud statute to a scheme involving execution of fraudulent absentee ballots. We have done the same by necessary implication in *Caldwell* and *Mandel*.