787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
NICHOLAS L. MONICA, JR., Defendant-Appellant.
 85-3694
 United States Court of Appeals, Sixth Circuit.
 3/28/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL from the United States District Court for the Northern District of Ohio
 Before: KENNEDY and RYAN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Nicholas L. Monica, Jr., appeals from his convictions in the United States District Court for the Northern District of Ohio for mail fraud and conspiracy to commit mail fraud under 18 U.S.C. Secs. 2,[1] 1341,[2] 371.[3] In early 1978, defendant and two other investors started a security business called Minute Men Patrol, Inc. ('the corporation') to provide patrol service to apartment buildings, businesses, and construction sites. Defendant, a graduate of the University of Toledo with a degree in business administration, agreed to conduct the corporation's day-to-day operations. Defendant's wife, Karen Monica, handled the payroll and bookkeeping until approximately August 11, 1981, when defendant fired her and they separated.
 
 
 2
 Viewed in the light most favorable to the government, the evidence disclosed that shortly after the business began the corporation initiated a 'scheme' designed to defraud the State of Ohio of quarterly income tax withholding payments and workers compensation premiums by treating wages as 'other expenses.' Ohio law required employers to file quarterly forms entitled 'Employers Payment of Income Tax Withheld' and to remit to the Ohio Department of Taxation the state income taxes withheld from employee wages. Using various procedures, the corporation recorded only a portion of its 'trusted' employees' wages on the payroll receipt that the corporation gave each 'trusted' employee on every payday and on the corporation's payroll records. The corporation treated the remaining portion of the 'trusted' employees' wages as 'gasoline expense.' Accordingly, the corporation understated the amount of employee wages and withholding taxes due the State of Ohio. Either defendant or his wife signed the quarterly withholding forms and mailed them to the Ohio Department of Taxation.
 
 
 3
 Ohio law also required the corporation to pay workers compensation premiums based on gross wages paid. The premium rates for each one hundred dollars of gross wages varied depending upon the employees' classifications. The corporation reported three classifications: security guards at $6.96 per one hundred dollars of gross wages; sales-supervisors at $.30 per one hundred dollars of gross wages; and lerk-office-help at $.13 per one hundred dollars of gross wages. The corporation's accountants used the corporations understated payroll records in preparing the required workers compensation returns. In addition, there was evidence that the Monicas would understate the amount of wages paid in the higher rated security guard classification while overstating the wages paid in the lower rated sales-supervisors classification. The effect of understating gross wages and then misclassifying those wages was to defraud the State of Ohio the proper amount of workers compensation premiums due. Either defendant or his wife signed the workers compensation reports and mailed them to the appropriate state agency.
 
 
 4
 During 1980 Karen Monica became interested in a police officer who had supervised a security guard training school for the corporation. Consequently, defendant fired his wife on August 11, 1981 and the two separated. A bitter divorce ensued. In December 1981, Karen Monica approached the FBI with charges against defendant and requested immunity for her own participation in the events that served as the bases for her charges.
 
 
 5
 On March 29, 1984, a federal grand jury indicted defendant on one count of conspiracy to commit mail fraud in violation of 18 U.S.C. Sec. 371 and fourteen counts of mail fraud in violation of 18 U.S.C. Secs. 2, 1341. On February 26, 1985, a jury convicted defendant on the one count of conspiracy to commit mail fraud and on six counts of mail fraud. The jury acquitted defendant on the remaining eight mail fraud counts. Defendant filed motions for judgment of acquittal and new trial which the District Court denied. Defendant was sentenced to concurrent terms of three years probation on each of the seven counts and fined $10,000 on the conspiracy to commit mail fraud count.
 
 
 6
 Essentially, defendant raises three issues on appeal: (1) Whether the District Court erred in denying his motion for judgment of acquittal; (2) Whether the District Court abused its discretion in denying his motion for a new trial; and (3) Whether counsel's failure to file notice under Fed. R. Crim. P. 12(2) of intent to call an expert witness deprived defendant the effective assistance of counsel. For the reasons set forth below, we affirm defendant's convictions.
 
 I.
 
 7
 Defendant argues that the District Court erred in denying his motion for judgments of acquittal for two reasons. Initially, defendant contends that 18 U.S.C. Sec. 1341 does not apply to an activity that a State regulates. Under 18 U.S.C. Sec. 1341, however, the essential elements of mail fraud 'are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme.' Pereira v. United States, 347 U.S. 1, 8 (1954). See also United States v. Valavanis, 689 F.2d 626, 627 (6th Cir. 1982). Although 18 U.S.C. Sec. 1341 does not define 'a scheme to defraud,' the statute also does not contain any restrictive language excluding any type of fraudulent conduct using the mails. United States v. Brewer, 528 F.2d 492, 494-95 (4th Cir. 1975). In Parr v. United States, 363 U.S. 370, 389 (1960) (quoting Badders v. United States, 240 U.S. 391, 393 (1916)), the Supreme Court stated: 'The fact that a scheme may violate state laws does not exclude it from the proscriptions of the federal mail fraud statute, for Congress 'may forbid any . . . [mailings] . . . in furtherance of a scheme that it regards as contrary to public policy, whether it can forbid the scheme or not." See also United States v. States, 488 F.2d 761, 767 (8th Cir. 1973), cert. denied, 417 U.S. 909 (1974) ('The purpose of 18 U.S.C. Sec. 1341 is to prevent the Postal Service from being used to carry out fraudulent schemes, regardless of what is the exact nature of the scheme and regardless of whether it happens to be forbidded by state law.').
 
 
 8
 In United States v. Mirabile, 503 F.2d 1065 (8th Cir. 1974), cert. denied, 420 U.S. 973 (1975), the Eighth Circuit affirmed the appellant's conviction for federal mail fraud for a scheme in which he understated the gross retail sales of his restaurant on the monthly sales/use tax returns that he mailed to the Missouri Department of Revenue. The Eighth Circuit reiterated that the mail fraud statute applies to 'any scheme or artifice to defraud' which uses the mails. Id. at 1066 (emphasis in original). See also United States v. Flaxman, 495 F.2d 344 (7th Cir.), cert. denied, 419 U.S. 1031 (1974) (affirming appellant's convictions under 18 U.S.C. Secs. 371, 1341 for using the mails to submit false retailers' occupation tax returns to the State of Illinois). In this case, defendant stipulated that the corporation used the mails in sending the quarterly withholding forms and the workers compensation reports to the State of Ohio. We agree with the District Court that 18 U.S.C. Sec. 1341 applies in the context of mailing incorrect state tax returns and workers compensation reports.
 
 
 9
 Second, defendant maintains that the District Court should have granted his motion for judgments of acquittal because the record does not contain sufficient evidence to support the jury's verdicts. A motion for judgment of acquittal under Fed. R. Crim. P. 29 'raises the question of whether the evidence is sufficient to support a verdict.' United States v. Cox, 593 F.2d 46, 48 (6th Cir. 1979). When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307, 319, reh'g denied, 444 U.S. 890 (1979) (emphasis in original). See also United States v. Strong, 702 F.2d 97, 99 (6th Cir. 1983). In making this determination, this Court must draw reasonable inference from the evidence in the government's favor. Jackson v. Virginia, 443 U.S. at 319. See also United States v. Stull, 743 F.2d 439, 442 (6th Cir. 1984), cert. denied, 105 S. Ct. 1779, reh'g denied, 105 S. Ct. 2351 (1985).
 
 
 10
 A rational jury, when viewing the evidence in a light most favorable to the government, could have found defendant guilty beyond a reasonable doubt. Defendant's wife, although testifying under a grant of immunity, explained a scheme to defraud in which the corporation paid employees a part of wages as gasoline expense. Four individuals, Jeannie Jones, Donna Migliori, Nancy Leu and Vicki McCollum, who assisted Karen Monica with the bookkeeping duties, corroborated her testimony regarding the partial recording of wages in the payroll record and treating the balance of wages as expense. In addition, other employees testified that they received wages designated as 'expenses.' This procedure continued after Karen Monica left the corporation. Donna Migliori testified that defendant personally instructed her to pay employees with two checks: one designated wages; the other designated expenses. Migliori stated that the 'expense' check was actually wages but was not posted in the payroll records of the company. Finally, William Meyers and Robin Syrek, the corporation's accountants at different times, testified that they became suspicious of the corporation's large gasoline expenses. Syrek testified that the corporation's gasoline expense kept increasing even though the corporation's business was decreasing. When Meyers confronted defendant with his suspicions that the gas expenses were disguised wages, defendant responded that such treatment was good for the corporation and good for the employees. Syrek testified that defendant admitted to her that the expense checks were wages but that he was doing this to save on taxes. Defendant or his wife signed the quarterly tax returns and workers compensation reports. Furthermore, defendant stipulated that the corporation mailed the returns and reports to the appropriate State agency. Although the jury found defendant not guilty on four of the five counts dealing with workers compensation returns, we find that sufficient evidence supports the jury's verdicts on the other counts.
 
 II.
 
 11
 Defendant argues that the District Court erred in denying his motion for a new trial on the ground that the District Court improperly refused to permit the testimony of Dr. Harry Snyder. Fed. R. Crim. P. 33 provides in pertinent part that: 'The court on motion of a defendant may grant a new trial to him if required in the interest of justice.' This Court has stated that such motions are directed 'to the sound discretion of the trial judge whose decision is not to be disturbed absent a showing of abuse of discretion.' United States v. Barlow, 693 F.2d 954, 966 (6th Cir. 1982), cert. denied, 461 U.S. 945 (1983). Although appellee contends that the District Court excluded the testimony because it was not relevant, the District Court's opinion and order denying defendant's motions for judgment of acquittal and new trial stated: 'The Court's ruling to exclude Dr. Snyder's testimony was based on defendant's failure to comply with Rule 12.2(b) Fed. R. Crim. P. . . .' Fed. R. Crim. P. 12.2(b) provides in pertinent part:
 
 
 12
 If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his guilt, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. . . .
 
 
 13
 Although defendant concedes that he did not file such notice, he argues that Rule 12.2(b) does not apply because he sought to introduce Dr. Snyder's testimony to show that the nature of his relationship with his ex-wife precluded the possibility of any conspiracy between them. Defendant argues that Dr. Snyder's testimony would have indicated that defendant's physical and emotional condition during the relevant time period made concerted action, much less conspiracy or formulation of a scheme, ludicrous. Even if relevant, Dr. Snyder's offered testimony falls within the words 'mental condition of the defendant bearing upon the issue of his guilt' in Rule 12.2(b). Under Fed. R. Crim. P. 12.2(d), the District Court had the authority to exclude Dr. Snyder's testimony for the failure to comply with Fed. R. Crim. P. 12.2(b). The District Court did not abuse its discretion in excluding Dr. Snyder's testimony or in denying defendant's motion for a new trial.
 
 III.
 
 14
 Finally, defendant alleges that he did not receive the effective assistance of counsel. In Strickland v. Washington, 104 S. Ct. 2052 (1984), the Supreme Court articulated a two-part test that a defendant must satisfy to establish that counsel's assistance was so ineffective as to require a reversal of a conviction. First, the defendant must establish that defense counsel's performance was deficient. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived defendant of a fair trial whose result was reliable. Id. at 2064. Even assuming that defense counsel's performance fell below a minimum standard of competence, defendant has not demonstrated any prejudice. After examining Dr. Snyder's proffered testimony, we conclude that the testimony does not raise a reasonable doubt about the conspiracy count and would have had no effect on the mail fraud counts. If counsel's performance was deficient, it did not deprive defendant of a fair trial.
 
 
 15
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Title 18 U.S.C. Sec. 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 [2]
 Title 18 U.S.C. Sec. 1341 provides in pertinent part:
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 
 
 [3]
 Title 18 U.S.C. Sec. 371 provides in pertinent part:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.