**UNITED STATES of America, Plaintiff,**

v.

**Harry V. MOHNEY, Thomas H. Tompkins, Elizabeth L. Schribner and Lee J. Klein, Defendants.**

**Crim. A. No. 88–CR–50062–FL–1–2–3–4.**

United States District Court,
E.D. Michigan, S.D.,
Flint.

Oct. 2, 1989.

**1198**

Richard L. Delonis, Detroit, Mich., Joseph Allen, for plaintiff.

Clyde B. Pritchard, Edith S. Thomas, Detroit, Mich., for Mohney.

J. Terrance Dillon, Grand Rapids, Mich., for Tompkins.

Carl L. Rubin, Southfield, Mich., for Schribner.

Larry C. Willey, Grand Rapids, Mich., for Klein.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Defendants' Motion to Dismiss Count I of the Indictment (*See* Appendix A) is essentially focussed on the application of *United States v. Minarik*, 875 F.2d 1186 (6th Cir.1989); *United States v. Hook*, 781 F.2d 1166 (6th Cir.1986); *United States v. Fawaz*, 881 F.2d 259 (6th Cir.1989); *United States v. Shermetaro*, 625 F.2d 104 (6th Cir.1980).

The essential principles of these cases insofar as they relate to the defendants' motion to dismiss Count I are: In *Shermetaro*,[1] the defendant claimed that 18 U.S.C. § 371,[2] the statute involved in the present case, "was not intended to cover conspiracies involving violations of the Internal Revenue laws or conspiracies to defraud the Internal Revenue Service." Defendant argued "that 18 U.S.C. § 371 was preempted by Title 26 of the United States Code." [3] Title 26 is the Internal Revenue Code. Without specific or detailed reasoning, the Sixth Circuit rejected the appellant's argument and held that the conspiracy was appropriately charged under § 371 as the language of § 371 was "sufficiently broad on its face to include the offense of which Shermetaro was found guilty." [4] The court in so stating was referring to both the "offense" and the "defraud" language of § 371. It is fair to conclude that the *Minarik* issue was not addressed in *Shermetaro* —only whether Title 26 preempted § 371 as it related to criminal Internal Revenue Code violations. Even though *Shermetaro* is relied on by the government, the above reading thereof makes it inapplicable to the issue here. Thus, it will no longer be addressed or discussed.

Next in chronology is *Hook*, where the defendant engaged in conduct for the purpose of concealing assets from the IRS although he filed timely and accurate tax returns. These returns showed almost $300,000 of taxes due, but Hook paid only a few thousand dollars thereon. After the IRS failed to locate assets belonging to Hook, he, along with others, was indicted for conspiring to evade the payment of income taxes for certain years and attempting to evade the payment of taxes for certain years. On trial, he was convicted only of the charges of attempting to evade the payment of taxes for two years and the misdemeanor lesser included offense of willfully failing to pay income taxes for certain years. The felony convictions were under 26 U.S.C. § 7201 which provided in pertinent part: "Any person who willfully

---

**1.** Defendant was charged with a conspiracy "to defraud the United States ... by obstructing and hindering the ... Internal Revenue Service in its lawful duty to ascertain, compute, assess and collect federal income taxes of certain entities...." The conspiracy related to documentary coverups, including documents required to be submitted to the IRS, to conceal kickbacks to doctors from a laboratory to whom doctors would refer their patients for tests or other laboratory work.

**2.** 18 U.S.C. § 371 provides in pertinent part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States or any agency thereof in any manner or for any purpose...."

**3.** *Shermetaro*, p. 109.

**4.** The language of the statute to which the Court referred was quoted in footnote 2 hereof.

attempts in any manner to evade or defeat any tax ... or payment thereof shall ... be guilty of a felony." Appellant Hook claimed he should have been charged under § 7206(4) which provided: "Any person who ... removes, deposits, or conceals ... any goods or commodities for or in respect whereof any tax is or shall be imposed, or any property upon which levy is authorized by § 6331, with intent to evade or defeat the assessment or collection of any tax ... shall be guilty of a felony...." [5]

The Court of Appeals rejected defendant's argument that § 7201 goes to concealing assets only if the taxpayer also files a fraudulent return, or otherwise attempts to conceal the existence or amount of taxable income, and held that § 7206(4) was not intended to be the sole remedy for the concealment of assets as an act of tax evasion,[6] which is the portion of the decision which has application to the present issue. It is, however, not pertinent in the present case because it was essentially an argument as to which of two provisions of the Internal Revenue Code the defendants' conduct violated.

We turn now to *Minarik*, the Sixth Circuit decision upon which defendants so strongly rely. Here, the court dealt directly with the two separate clauses of § 371, the "offense" clause and the "defraud" clause, in a case where the defendant was charged and convicted under the "defraud" clause. The court said: "The statute was written in the disjunctive in order to criminalize two categories of conduct: conspiracies to commit offenses specifically defined elsewhere in the federal criminal code, and conspiracies to defraud the United States. The first category requires reference in the indictment to another criminal statute which defines the object of the conspiracy. The second category, the "defraud" clause stands on its own without the need to refer to another statute which defines the crime." [7]

After trial, the district judge granted defendant's motion for a judgment notwithstanding the verdict. The Court of Appeals affirmed on a wholly different basis—that the evidence on trial constituted:

"only a conspiracy under the offense clause to violate 26 U.S.C. § 7206(4), which provides that any person who: [r]emoves, deposits, or conceals, or is concerned in removing, depositing or concealing, any goods or commodities for or in respect whereof any tax is or shall be imposed or any property upon which levy is authorized by section 6331 [providing for levy after notice and assessment of a tax], with intent to evade or defeat the assessment or collection of any tax imposed by this title ... shall be guilty of a felony." [8]

Judge Merritt noted that the government's theory shifted throughout the case, but that putting the indictment together with the government's Bill of Particulars and the evidence offered at trial, showed that the defendants should have been charged under the "offense" clause of the statute which required a reference to the underlying statute, since the final claim of the government was that the conspiracy was to " 'thwart the purpose of the government in collecting the taxes.' " [9] Judge Merritt pointed out that a Supreme Court decision had stripped the word "defraud" of its "common law roots limiting it to purposeful misrepresentation and broadened it to include 'interference' with 'lawful government functions ... at least by means that are dishonest.' " [10] Of great importance was the government's failure to charge "the conspiracy to commit the statutory offense directly relevant to the alleged conduct—a conspiracy to violate § 7206(4) of the Internal Revenue Code...." [11]

**5.** *Hook,* p. 1169.

**6.** In *Hook,* Judge Merritt dissented but on statute of limitations grounds, not on the grounds dealt with in this opinion.

**7.** *Minarik,* pp. 1186, 1187.

**8.** *Minarik,* p. 1187.

**9.** *Minarik,* p. 1190.

**10.** *Minarik,* p. 1191.

**11.** *Minarik,* p. 1191.

Judge Merritt made the meaning of *Minarik* very clear when he said: "The court should require that any conspiracy prosecution charging that conduct (conduct defined by a specific federal criminal statute) be brought under the offense clause in order 'to achieve the remedial purposes that Congress had identified' ... if it is clear that Congress has specifically considered a given pattern of wrongful conduct and enacted a specific statute with a specific range of penalties to cover it." [12]

Judge Merritt explained further dealing with prior cases: "These precedents, taken together, show that § 371 creates *one* crime that may be committed in *one of two* alternate ways." [13] Speaking of the "defraud" clause, he said " '[i]ts purpose was to reach conduct not covered elsewhere in the criminal code.' " [14]

Judge Merritt concluded his opinion as follows:

> But where the duties of a citizen are as technical and difficult to discern as they are when a taxpayer, before levy, engages in otherwise legitimate activities that may make ultimate collection more difficult, we hold that a Congressional statute closely defining those duties takes a conspiracy to avoid them out of the defraud clause and places it in the offense clause. The conspiracy is still an indictable offense under the first clause of § 371. But compliance with our rule today will mean that prosecutors and courts are required to determine and acknowledge exactly what the alleged crime is. They may not allow the facts to define the crime through hindsight after the case is over.

> In the case before us, the prosecutors, either intentionally or unintentionally, used the defraud clause in a way that created great confusion about the conduct claimed to be illegal. The case should have been brought under the offense clause of § 371, and Judge Higgins was correct in his judgment that the

verdict cannot be allowed to stand. Accordingly, the judgment of the District Court is affirmed.

Two months ago, the Sixth Circuit decided *United States v. Fawaz*. There, the defendant was charged under § 7206(1) with several counts of filing false tax returns, and under § 7201 with evading excise taxes. Defendant claimed that the false statements made—understating the amount of gasoline purchased by his filling station business—had to obscure some other false entry in the tax return or the understatement would not be material. The government responded by claiming that the false entries made it more difficult for the IRS to verify the returns and thus materiality had been established. Moreover the understatements referred to in the § 7206(1) counts were material to the § 7201, evasion of gasoline excise tax counts. Both bases of materiality were held to be appropriate by the Court of Appeals reasoning that the understatements of gasoline purchased made it more difficult for the IRS to verify defendant's income tax returns and his fuel excise tax returns.

The court pointed out that "our tax assessment scheme relies on truthful self-reporting by taxpayers in order to make the IRS's task of verifying returns feasible. Courts have held that false entries are material within the meaning of § 7206(1) if they baffle the IRS in its effort to perform that function." [15]

Judge Merritt, the author of *Fawaz*, as well as *Minarik*, stated in *Fawaz* that: "A false statement is material when it hampers the IRS in verifying not only the return on which it appears but also related returns submitted by the defendant taxpayer or by a business entity in which he or she has a direct interest." [16]

The next step is to examine what the government has here charged in the Conspiracy Count, Count I of the Indictment,

---

12. *Minarik,* p. 1193.

13. *Minarik,* p. 1193. Emphasis in the original.

14. *Minarik,* p. 1194.

15. *Fawaz,* p. 263.

16. *Fawaz,* p. 264.

as fleshed out by the Bill of Particulars for the purpose of determining whether the offense actually charged therein is appropriate under *Minarik* to be charged under the "defraud" clause, or should it have been charged under the "offense" clause requiring the statement of the specific statutory reference or references, the violation(s) of which are the objectives of the conspiracy.

The most important provision of the indictment to the determination of the *Minarik* issue is this one: "OBJECT OF THE CONSPIRACY" paragraph which is:

> The object of the conspiracy was to defraud the United States by concealing the true ownership and control of particular adult oriented sexually explicit entertainment businesses, for the purpose of concealing the sources of funds used to acquire and expand those businesses, their sources of supply and their customers, and the amount and disposition of their income. As a result, verification by the International Revenue Service of the true income and expenses required to be reported by particular persons and entities was hindered, impeded, and impaired.

This is sort of a two-tiered statement of the object—first, the overall object being to conceal the true ownership and control of certain enterprises. The secondary purpose is to explain the overall purpose—to conceal fund sources, their sources of supply and their customers and the amount and disposition of income. The effect to be achieved is to prevent verification by the IRS of true income and expenses reported by particular persons or entities.

Stated another way, the purpose was to hide ownership so that verification by IRS of true income and expenses would be impeded—certainly not unlike *Fawaz* in that it would make verifying the returns more difficult for the IRS. *Fawaz*, it is noted, was a prosecution under § 7206(1).

Means and methods were separately stated in the present indictment as were the overt acts.

Thus, if a specific statute or statutes criminalize the object of the conspiracy,

*Minarik* would require granting the motion. If not, the indictment should stand. Looking at the stated object of the conspiracy—"concealing the true ownership and control ... of businesses"—the question arises as to whether a statute prohibits concealing ownership, for if so, the motion should be granted. The remaining portion of the "Object of the Conspiracy" paragraph states the reason, motive or purpose for concealing the ownership.

Because of the importance of the motion and the existence of the portion of the indictment entitled "THE OFFENSE," when the present motion was considered, the Court did grant an earlier denied motion for a Bill of Particulars. "THE OFFENSE" paragraph is as follows:

> Beginning on or about November 1, 1973, the exact date being unknown to the Grand Jury, and continuing to the present time, within the Eastern District of Michigan, Southern Division, and elsewhere, HARRY V. MOHNEY, ELIZABETH L. SCRIBNER, THOMAS H. TOMPKINS, and LEE J. KLEIN, hereinafter called defendants, together with others known and unknown to the Grand Jury, did unlawfully, knowingly, and willingly conspire, combine, confederate, and agree together and with each other to defraud the United States of America by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service of the Treasury Department of the United States in the ascertainment, computation, assessment, and collection of the revenue, to wit: the concealment of the true sources, amounts, and disposition of income received by particular persons and entities in the adult oriented sexually explicit entertainment business.

The Bill of Particulars (*See* Appendix B) hopefully would flesh out the true nature of the Count I charge so that the teachings of *Minarik* could be applied. The important parts of the Bill of Particulars for that purpose are as follows:

> 3. The government stated that, because of the success of the conspiracy, it would not attempt to establish at trial

the true sources, amounts or disposition of income, or those persons or entities that receive that income. This implies that such proof is not necessary to prove the conspiracy charged.

4. The government stated again that because of the success of the conspiracy, it would not determine as part of the government's case the true tax due by the persons, or the entities involved, or that any tax was due or owing. Again, this means that the government contends that under Count I it is not necessary to offer such proof.

5. The government stated that the IRS was impaired in its ability to ascertain, compute, assess and collect revenue by concealment of ownership and control of the entities involved. True income and expenses could not be determined. This means that the government contends such proofs are unnecessary under Count I.

10. The government cannot tell whether overall income tax liabilities of all the entities were reduced by defendant Thompkins' allegations of income and expenses. Thus, again implying that it is not necessary to the conspiracy charged.

12. The government indicated that the trial proofs would show defendant Mohney to be the true owner of the entities, thus stressing that the offense is essentially concealing ownership.

17, 18, 19 and 22. The government indicated that sources and amounts of income were concealed so that the government could not determine if all skimmed receipts were unreported but a substantial portion was not; that defendant Mohney owned or controlled all of the corporations listed on Appendix A and his interest was deliberately concealed.

23. The government is unable to prove the true amount of Mohney's income or all the sources thereof because of the success of the conspiracy charged.

27. The government will offer no evidence that the IRS was impeded, hindered or impaired in the performance of its function because "it is not relevant to proof of the conspiracy" charge.

28. The government cannot, due to the conspiracy, verify whether there are any overstated deductions or credits in the income tax returns involved.

From the Indictment and the Bill of Particulars, it can be seen that the essential thrust of the Count I conspiracy is the claimed hidden ownership or control of all 68 corporations by defendant Mohney. Because of such purpose, the government denies any obligation to prove that there is any tax due or that it would prove that true income and expenses were, in fact, not reported, or whether the overall tax for all the entities were reduced by artificial allocation between and among the entities or the true amount of Mohney's income.

What is clear from the Indictment and the Bill of Particulars is that the government intends to prove Mohney concealed his ownership or controlling interest in the corporations for the purposes stated.

What is unclear from the Indictment is whether or not the government claims that the IRS was impeded, hindered or impaired in the performance of its function. Paragraph 27 of the Bill of Particulars says it will offer no such evidence as it is not relevant. (Apparently on the basis that successful achievement of the purposes of the conspiracy is irrelevant.) On the other hand, on the oral argument on the defendants' Motion for a Bill of Particulars,[17] the government stated that:

> ... all sixty-eight corporations are part of the conspiracy, and all three hundred and eighty-seven tax returns are in some way false. Basically in that they do not show the ownership of Harry Mohney in those corporations, and it is in that way that he took steps to conceal from the IRS his ownership interest in his true taxable income.

The court then asked, "So you're saying that each one of those tax returns either by

---

**17.** Transcript of hearing of March 10, 1989, pp. 30 and 31.

commission (transcript erroneously says 'coalition') or omission is alleged to the falsely (sic) in the sense that it does not show Mohney's true relationship to the corporation"? The government's counsel responded, "That's true."

While saying that it will not offer any evidence that the government was hindered, impaired or impeded, in paragraph 5 of the Bill of Particulars, it stated that the IRS was impaired, hindered and impeded in performing its lawful function in ascertainment, assessment and collection of the revenue by the concealment of the true ownership and control fo the entities named. This apparent inconsistency may not in fact be an inconsistency if it is interpreted to mean that hiding ownership and control interests in itself inherently impedes, impairs or hinders and that the government need go no further in such a showing. Such an interpretation which resolves an apparent inconsistency in the government's position is therefore accepted. But such acceptance also has major significance in the *Minarik* motion because of *Fawaz*, a post *Minarik* decision which essentially held that, if the false statements under § 7206 hindered, impeded or impaired the IRS in verifying the tax returns, a function of the IRS, materiality under that statute was established. Thus, if as the government claims here that it could not determine income, deductions, etc., because of the concealed ownership or control of Mohney, materiality under § 7206 is established. This has obvious application here.

From all this, it appears clear to me that the government's accusation in Count I is essentially a charge that the defendants conspired to conceal Mohney's ownership or control interests by filing tax returns which falsely fail to show such ownership or control. The purposes for which this is done may be important for intent or motive purposes, but the purposes do not alter the fact that the basic claim is that the parties conspired to conceal Mohney's interests by

filing false returns which failed to reveal such interests.

26 U.S.C. § 7206 provides in part: "Any person who (1) willfully makes and subscribes any return ... which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or (2) willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under the internal revenue laws of a return ... which is fraudulent or is false as to any material matter ... shall be guilty of a felony...."

This fits perfectly the conduct which is the core, the very essence of the government's charge in Count I. Since it is not charged under the offense clause, and the statute is not specified in Count I, *Minarik* dictates the granting of the defendants' motion as to Count I.[18]

SO ORDERED.

## APPENDIX A

## INDICTMENT

### THE GRAND JURY CHARGES:
### COUNT ONE

#### PARTIES

At all times relative to this Indictment:

1. The Internal Revenue Service was a constituent agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by its citizens.

2. Modern Bookkeeping Services, Inc. (MBS) was a corporation organized under the laws of the state of Michigan on or about December 20, 1974, with its principal place of business in Durand, Michigan, and provided accounting and managerial services to adult oriented sexually explicit entertainment businesses.

---

**18.** The Court wants to indicate that the government's drafting of Count I occurred prior to *Minarik* and certainly was not intended to obscure the charge. Nevertheless, the language used was confusing and simply did not adequately advise the defendants of the nature of the charge as is required by *Minarik*.

3. Harry V. Mohney was the owner through nominee corporations of MBS and of its client businesses.

4. Thomas H. Tompkins was an accountant employed by MBS, beginning in January 1975, who prepared tax returns and performed managerial services on behalf of Harry V. Mohney and MBS's client businesses.

5. Elizabeth L. Scribner was an employee of MBS and its incorporator and performed managerial services on behalf of Harry V. Mohney and MBS's client businesses.

6. Lee J. Klein was an attorney licensed by the state of Michigan with offices on the premises of MBS who performed legal services on behalf of Harry V. Mohney and MBS's client businesses.

## THE OFFENSE

Beginning on or about November 1, 1973, the exact date being unknown to the Grand Jury, and continuing to the present time, within the Eastern District of Michigan, Southern Division, and elsewhere, Harry V. Mohney, Elizabeth L. Scribner, Thomas H. Tompkins, and Lee J. Klein, hereinafter called defendants, together with others known and unknown to the Grand Jury, did unlawfully, knowingly, and willingly conspire, combine, confederate, and agree together and with each other to defraud the United States of America by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service of the Treasury Department of the United States in the ascertainment, computation, assessment, and collection of the revenue, to wit: the concealment of the true sources, amounts, and disposition of income received by particular persons and entities in the adult oriented sexually explicit entertainment business.

## OBJECT OF THE CONSPIRACY

The object of the conspiracy was to defraud the United States by concealing the true ownership and control of particular adult oriented sexually explicit entertainment businesses, for the purpose of concealing the sources of funds used to acquire and expand those businesses, their sources of supply and their customers, and the amount and disposition of their income. As a result, verification by the Internal Revenue Service of the true income and expenses required to be reported by particular persons and entities was hindered, impeded, and impaired.

## MEANS AND METHODS

The said unlawful combination, conspiracy, confederation, and agreement was to be accomplished by the following means and methods:

Harry V. Mohney divested himself of his record ownership of sexually explicit adult oriented entertainment businesses, by causing a foreign corporation to purchase some of said businesses on the installment basis, and by "abandoning" others, and causing them to be incorporated by nominees.

Harry V. Mohney established, or caused to be established, a system whereby he had no record ownership interest in newly acquired adult oriented sexually explicit entertainment businesses. Said businesses were incorporated by nominees, or purchased by nominee corporations, and their registered agents were attorneys or instructed to forward all information to attorneys. Lee J. Klein became the resident agent, or the attorney directing the resident agents, of most of said corporations.

Harry V. Mohney directly managed MBS and the wholesale adult oriented sexually explicit entertainment businesses under the ruse of an independent consultant. Local retail adult oriented sexually explicit entertainment businesses had on site managers who were supervised by MBS under the direction of Elizabeth L. Scribner and others.

MBS maintained control over local retail adult oriented sexually explicit entertainment businesses by requiring each of the on site managers to open a local bank account in the name of the business. The authorized signature on each bank account would not be the local manager's signature, but would be a facsimile of a signature of a nominee or an invented person.

The signature facsimile rubber stamp and the checkbook would be maintained at the offices of MBS in Durand, Michigan. All revenues would be deposited by the local manager to the local bank account, and would be reported to MBS by means of a daily report. All bills would be submitted to MBS for payment.

All income tax returns were prepared at MBS under the supervision of Thomas H. Tompkins from books and records maintained at MBS on the basis of revenue deposited to the bank accounts, as adjusted by year end journal entries. Thomas H. Tompkins caused income and expenses to be allocated among MBS client businesses without regard to economic reality, in order to reduce the sum of the federal income tax liabilities of the client businesses as a whole. Lee J. Klein caused said corporation income tax returns to make no required disclosure of corporate affiliations or ownership interests. Harry V. Mohney's income tax returns concealed the sources of his income and did not disclose his control over foreign bank accounts. No U.S. corporation income tax returns were filed on behalf of any foreign corporations, even though several controlled foreign corporations had an obligation to file U.S. corporation income tax returns. As a result, the affiliation between MBS's client businesses and Harry V. Mohney was concealed, and the ability of the Internal Revenue Service to audit the allocation of income and expenses between them was hindered impeded and impaired.

Harry V. Mohney established, or caused to be established, a system whereby substantial amounts of currency were skimmed from certain adult oriented sexually explicit entertainment businesses, were not deposited to any bank account, and were not included in the books and records maintained by MBS and used for the preparation of U.S. income tax returns. Said currency was used to expand or support unrelated adult oriented sexually explicit entertainment businesses, to acquire new adult oriented sexually explicit entertainment businesses, and to pay the personal expenses of Harry V. Mohney. Substantial portions of said currency was not reported on any of the U.S. income tax returns prepared by MBS.

## OVERT ACTS

On or about November 1, 1973, the exact date being unknown to the grand jury, Harry V. Mohney caused a foreign corporation, Special Situations, Ltd., to acquire in an installment purchase all of the stock of American News Co., Inc., American Amusement Company, Inc., and International News Distributors, Inc.

On or about the dates set forth on the attached Appendix A,* defendant Harry V. Mohney caused the listed corporate entities to be incorporated in the place and manner stated. Lee J. Klein caused himself to be designated "resident agent" of the said entities on or about the dates specified.

On or about the dates set forth on the attached Appendix B,* defendant Harry V. Mohney caused the listed bank accounts to be opened on behalf of the said corporate entities, with the named authorized signatures. In many instances, the named authorized signature was not a natural person but merely an invented name. In all instances, the bank account checkbook was maintained on the premises of MBS and all checks were written by employees of MBS, by means of a signature facsimile stamp, under the supervision of defendant Elizabeth L. Scribner.

From on or about April 15, 1980, and continuing until the present time, defendant Harry V. Mohney caused defendant Thomas H. Tompkins to prepare and file, or supervise the preparation and filing of the U.S. income tax returns set forth on the attached Appendix C,* both defendants well knowing and believing that many of said income tax returns would be signed by nominee corporate officers, and that they did not accurately disclose on schedule G, line H, their true ownership or shareholder relationships.

On or about July 16, 1982, defendants Harry V. Mohney and Thomas H. Tomp-

* Omitted by the Court for purposes of publication.

kins prepared and caused to be prepared, signed and caused to be signed, and filed and caused to be filed an individual income tax return, Form 1040, on behalf of Harry V. Mohney for calendar year 1981, both defendants well knowing and believing that said income tax return did not accurately report the true sources and amounts of Harry V. Mohney's income for said calendar year, and did not disclose on schedule B, part III, line 9, Harry V. Mohney's interest in or other authority over foreign bank accounts.

On or about October 19, 1983, Harry V. Mohney and Thomas H. Tompkins prepared and caused to be prepared, signed and caused to be signed, and filed and caused to be filed an individual income tax return, Form 1040, on behalf of Harry V. Mohney for calendar year 1982, both defendants well knowing and believing that said income tax return did not accurately report the true sources and amounts of Harry V. Mohney income for said calendar year, and did not disclose on schedule B, part III, line 16, Harry V. Mohney's interest in or other authority over foreign bank accounts.

On or about October 19, 1984, Harry V. Mohney and Thomas H. Tompkins prepared and caused to be prepared, signed and caused to be signed, and filed and caused to be filed an individual income tax return, Form 1040, on behalf of Harry V. Mohney for calendar year 1983, both defendants well knowing and believing that said income tax return did not accurately report the true sources and amounts of Harry V. Mohney's income for said calendar year, and did not disclose on schedule B, part III, line 16, Harry V. Mohney's interest in or other authority over foreign bank accounts.

In violation of Title 18, United States Code, Section 371.

### APPENDIX B

### BILL OF PARTICULARS

NOW COMES the United States of America, in compliance with the Order of the Court made September 8, 1989, during hearing on defendants' motion to dismiss count I of the indictment.

Defendants' requested particulars require theoretical analysis of facts the government anticipates will be proved during trial on the merits of this case. Of course, the United States cannot anticipate all of the evidence which will be elicited at trial, nor can the United States guarantee that all evidence offered during its case in chief will be received. The following particulars reflect analysis of some of the evidence the government anticipates will be offered at trial.

### DEFENDANT'S REQUESTED PARTICULARS

1. All employees of Modern Business Services (MBS) and its client corporations could be categorized as potential unindicted coconspirators. The names and addresses of those employees known to the grand jury were on the witness list previously furnished defendants.

2. The names, dates and places of incorporation of the nominee corporations through which defendant Mohney owned MBS and its client businesses are on the attached Appendix A.

3. Because of the success of the conspiracy charged in Count I of the indictment, the government will not attempt to establish at trial the true sources, amounts, or disposition of income used to acquire, expand or operate those businesses in the attached Appendix A, or the particular persons and entities that received that income, except evidence will be introduced at trial proving that defendant Mohney received, controlled and directed the disposition of the currency skimmed from peep machines pertaining to the entity known as International Amusement Inc./Otis Mohney, Inc. The government also anticipates evidence may be offered pertaining to the sources of funds used to acquire, expand or operate specific businesses including Caribbean Films, Inc., Adult Toy and Gift, World Video, L.C. Park Theater, McCook Theater, Beverly Theater, Flint Theatrical, Cinema Springfield, A.J. Films, Inc., Showworld of Dallas, Inc. and the Ellwest/Jolar Theaters.

4. Because the conspiracy charged in Count I of the indictment was successful at concealing the sources, amounts, and disposition of income received by defendant Mohney, the entities listed on the attached Appendix A, and the persons involved with or employed by those entities, the United States is unable to verify all items necessary to determine the true tax due by those persons or entities.

5. The United States has charged in the indictment that the IRS was hindered, impeded and impaired in performing its lawful governmental function in the ascertainment, computation, assessment and collection of the revenue, by the concealment of the true ownership and control of the entities listed on the attached Appendix A, the concealment of the sources used to acquire, expand, and operate those businesses, and the amount and disposition of their income. As a result, the IRS is unable to verify the true income and expenses required to be reported by those entities and related individuals.

6. The government anticipates that the evidence at trial will show that defendant Mohney claimed to have abandoned his sole proprietorship Amusement Machines Co. in 1974. Defendant Mohney caused the business subsequently to be reported as a sole proprietorship on the income tax returns of his father, Otis Mohney, who had no ownership interest or managerial control over the business. On or about January 10, 1978, the same business was incorporated in Michigan *sub nom* Otis Mohney, Inc.

Similarly, the government anticipates that the evidence at trial will establish that defendant Mohney "abandoned" his wholly owned corporation Screen News Distributors, Inc. Defendant Mohney caused the business to be re-organized and incorporated (in part) *sub nom* Modern Bookkeeping, Inc. in Michigan on December 20, 1974.

7. The United States will not attempt to prove that Defendant Klein acted as resident agent, or the attorney directing the resident agent, for any corporation not listed on Appendix A to Count One of the Indictment. The United States is without knowledge, and cannot anticipate whether the evidence at trial will disclose, whether defendant Klein acted as resident agent, as the attorney directing the resident agent, or in fact directed the resident agent of any other corporation.

8. The government anticipates that the evidence at trial will disclose that on site managers were supervised, directly or indirectly, by all co-conspirators charged in the indictment. The government further anticipates that the evidence at trial will disclose that on site managers were supervised in the name of MBS, whose policy it was whenever possible to affix no individual names to correspondence. Accordingly, the government anticipates that the evidence at trial will show that on site managers typically cannot specify the individual from whom instructions were received, other than from MBS.

9. The government anticipates that the evidence at trial will establish that defendant Thompkins caused income and expenses to be allocated without regard to economic reality, as a matter of custom and practice. The government anticipates that evidence at trial may be offered with regard to specific instances pertaining to the following returns:

| ENTITY | RETURN |
| --- | --- |
| Worldwide Business Management and Consulting, Inc. | 8201 |
| International Amusement, Ltd/Otis Mohney, Inc. | 8305 |
| Variety News and Distributing Co., Inc. | 8010 |
| | 8110 |
| | 8210 |
| | 8310 |
| A.J. Films, Inc. | 8301 |
| | 8401 |
| First Amendment Books, Inc. | 8010 |
| | 8110 |
| | 8210 |
| | 8310 |
| Beverly Theatres, Inc. | 8006 |
| | 8206 |
| Gail Palmer, Ltd. | 8002 |

10. Because the conspiracy charged in Count One of the indictment concealed the sources and dispositions of funds among the related persons and entities preventing verification of all items affecting true tax liability, the United States is unable to de-

termine whether the federal income tax liabilities of the client businesses as a whole were reduced in fact by defendant Thompkins' allocations of income and expense items.

11. Defendant Klein directed the reporting of corporate affiliations or ownership interests on the returns listed on the attached Appendix B. The government contends that the evidence at trial will establish that defendant Mohney was the true owner, directly or indirectly, of a controlling interest in all of these corporations.

12. The evidence at trial will establish that defendant Klein was "in house counsel" to defendant Mohney, MBS, and its client businesses.

13. The United States anticipates that the evidence at trial will establish defendant Mohney's control over foreign bank accounts as follows:

| ACCOUNT NAMES | LOCATION |
| --- | --- |
| Caribbean Films Distributing, N.V. | Maduro & Curiel's Bank N.V. Curacao, N.A. |
| Fun Films, Inc. | Barclay's Bank International Limited Nassau, Bahamas |
| Fun Films, Ltd. AC # 1478006 | Barclay's Bank Nassau, Bahamas |
| Special Situations, Ltd. | Barclay's Bank Nassau, Bahamas |
| European Investments, N.V. | Imperial Bank Nassau, Bahamas |

The United States has no knowledge of "the dates of inception" for these accounts.

14. The government anticipates that the evidence at trial will establish that the following foreign corporations had an obligation to file U.S. corporation income tax returns because of the receipt of U.S. source income or because of the disposition of an investment in U.S. real property.

Caribbean Films Distributors, N.V.

European Investments, N.V.

Special Situations, Ltd.

Fun Films, Inc.

15. Evidence at trial will establish that defendant Mohney in fact owned, directly or indirectly, a controlling interest in MBS's client businesses.

16. The government anticipates that the evidence at trial will establish that defendant Mohney caused peep machine revenue to be skimmed in the approximate amounts specified in counts 5, 6 and 7 of the indictment. The government anticipates that the evidence at trial will establish that the revenue consisted of gross receipts of the corporation International Amusement, Inc./Otis Mohney, Inc. However, because the conspiracy charged in count one of the indictment concealed the true sources, amounts and disposition of income received by persons and entities in the Mohney Organization, and concealed the sources of funds used to acquire, expand, and operate those businesses, the United States cannot anticipate what other entities or persons may claim a concealed interest in the funds or have received the benefit of the funds.

The government anticipates that the evidence at trial will show that the skimmed currency was used to pay expenses of Caribbean Films, Adult Toy and Gift, World Video, L.C. Park Theater, McCook Theater, and the Beverly Theater. The government anticipates that the evidence will show that this currency was also used to pay defendant Mohney's expenses for travel, entertainment, food, clothing, legal, accounting, and alimony.

Defendant Scribner actually received skimmed receipts on behalf of defendant Mohney and disbursed skimmed currency at the direction and for the personal benefit of defendant Mohney. Defendants Klein and Thompkins facilitated the skim by concealing the sources, amounts, and disposition of income received by and for persons and entities within the Mohney organization.

17. Because the conspiracy charged in Count One of the indictment concealed the true sources, amounts and disposition of income received by persons and entities in the Mohney organization, the United States is unable to verify whether all of the skimmed receipts were unreported on tax returns prepared by MBS. The evidence at trial will establish that at least a substantial portion of the skimmed receipts were

not reported on any tax return prepared by MBS as charged in the indictment.

18. The evidence at trial will establish that defendant Mohney owned, directly or indirectly, a controlling interest in all of the corporations listed on Appendix A of the indictment.

19. The government anticipates that evidence introduced at trial will establish that defendant Mohney was the true owner, directly or indirectly of a controlling interest in all of the corporate entities, and that his ownership interest was deliberately concealed.

20. The government anticipates that evidence offered at trial will establish that all of the bank accounts listed on Appendix B of the Indictment utilized an invented name as the authorized signature.

21. The government anticipates that the evidence at trial will establish that all individuals signing the corporate tax returns on Appendix C ** to count one of the indictment were nominee corporate officers, except the following:

| CORPORATION | OFFICER |
| --- | --- |
| Modern Bookkeeping | R.E. Stewart |
| Michigan Reef | R. Hardy |
| Variety News | C. Mello |
| Gail Palmer Ltd. | G. Palmer |
| International Amusement | K. Goodrich |
| | J. St. John |
| Pastime Coin | K. Goodrich |
| | J. St. John |
| Saints Amusement | K. Goodrich |
| | J. St. John |
| Alpena Theatres | L. Sweet |
| Beverly Theatre, Inc. | J.G. Hafiz |
| Bud's Books, Inc. | B. Eneix |
| Cinema Theatre of Kalamazoo | K. Cooper |
| Flint Theatrical | N. Schwartz |
| Ken Cooper Enterprises | K. Cooper |
| S & B Properties, Inc. | H.N. Morris |
| WEB Investments | W. Brandt |

22. The government anticipates that evidence introduced at trial will establish that defendant Mohney was the true owner, directly or indirectly, of a controlling interest in all of the corporate entities, and that his ownership interest was deliberately concealed.

23. Because the conspiracy charged in Count One of the indictment concealed the true sources, amounts, and disposition of income received by, or expended on behalf of, persons and entities in the Mohney organization, the government is unable to determine the true amount of defendant Mohney's income, or all of the true sources of his income. The government anticipates that the evidence at trial will establish that defendants Mohney and Thompkins did not report all of Mohney's gross income for calendar years 1981, 1982 and 1983, and that skimmed peep revenue from International Amusement, Inc./Otis Mohney, Inc. is an unreported source of income.

24. Because the conspiracy charged in Count One of the indictment concealed the true sources, amounts, and disposition of income received by, or expended on behalf of, persons and entities in the Mohney organization, the government will not prove the exact amount of the unreported income. The government anticipates that the evidence at trial will establish that defendants Mohney and Thompkins did not report a substantial amount of Mohney's gross income for calendar years 1981, 1982 and 1983, and that the source of the unreported income is skimmed peep revenue.

25. The roles of the defendants in the conspiracy were specified in the indictment. The roles in the conspiracy of the employees of MBS and its client businesses, all of whom could be characterized as potential co-conspirators, is the same as their role in the Mohney organization.

26. This requested particular is not a proper request for particulars and therefore exceeds the scope of the Court's oral order.

27. The government does not anticipate the introduction of any evidence concerning whether the IRS was in fact hindered, impeded, or impaired because it is not relevant to proof of the conspiracy charged in Count One of the Indictment. *United States v. Olgin*, 745 F.2d 263, 273 (3rd Cir.1984).

28. The conspiracy charged in Count One of the indictment prevents the United States from verifying whether there are any overstated deductions or credits in the

** Omitted by the Court for purposes of publication.

income tax returns involved in this case. However, the United States anticipates that evidence will be introduced showing that some of the accounting entries on tax returns identified in response to request no. 9 affects the accuracy of deductions or credits on related tax returns.

29. This request for particulars is not a proper request for particulars and therefore exceeds the scope of the Court's order. It is impossible to predict every item of circumstantial evidence which will be elicited at trial to prove defendants' state of mind.

### DEFENDANTS' SECOND REQUEST FOR PARTICULARS

Defendants ask for detailed discovery concerning civil audits of the corporate entities within the Mohney organization. The United States does not intend to prove that any particular audit was impeded or impaired as a result of the conspiracy charged in Count One of the indictment, and will object to the introduction of such evidence on relevancy grounds. Indeed, even the impossibility of actually impeding the IRS is not a defense to the crime charged in count one of the indictment. *United States v. Olgin*, 745 F.2d 263, 273 (3rd Cir.1984). Accordingly, the United States will not answer these requests for particulars as they exceed the scope of the Court's order.

Respectfully submitted,
STEPHEN J. MARKMAN
United States Attorney
s/Joseph Allen
for RICHARD L. DELONIS
Assistant United States Attorney
s/Joseph Allen
JOSEPH ALLEN
Assistant United States Attorney
817 Federal Building
Detroit, Michigan 48226
(313) 237–4727

DATED: 9/22/89

### APPENDIX A

| CORPORATION NAME | STATE INCORPORATED FOREIGN CORPORATION | DATE | INCORPORATORS |
|---|---|---|---|
| MIC Limited | MI 071–907 | 03–02–73 | Tom Hollis Jr. |
| L.C. Theater Corp. | MI 099–637 | 06–18–74 | Lawrence Cooper |
| First Amendment Books Inc. (Johnson Enterprises, Inc.) | MI 149–473 | 11–04–74 | George S. Johnson |
| Imagination Corporation | MI 020–137 | 11–04–74 | Thomas M. Demeter |
| Variety News & Dist. Co., Inc. | MI 078–932 | 11–04–74 | George S. Johnson |
| Mid–State Theaters, Inc. | MI 168–359 | 11–14–74 | Curtis Peterson |
| Southland News Co. Inc. | KY 47718 IL 5199–578–3 | 11–21–74 | Garth Quinn |
| Modern Bookkeeping Inc. | MI 101–439 | 12–20–74 | Richard Hardy |
| Michigan Reef Development Corp. | MI 135–603 | 12–03–75 | D.S. Nuter S.M. Dalrymple |
| Bud's Books Inc. | MI 007–874 | 02–19–76 | Bud Eneix |
| Pastime Coin Machine Co. Inc. | MI 803–859 | 02–25–76 | Otis Mohney |
| Studio Blue Inc. | MI 001–502 | 03–15–76 | Richard N. DeYoung Harry N. Fleming |
| Flint Theatrical Enterprises, Inc. | MI 029–346 | 03–18–76 | Nathan J. Schwartz |
| Dynamic Industries, Ltd. | DEL | 05–11–76 | Robert M. Levin |
| Ritz Theatre Corporation | MI 151–751 | 10–01–76 | Jack Abramson Sheldon Abramson Martin Mouradian Korman Industries, Inc. Martin Halperin |
| Jewell Theatre Corp. (Michigan Toy & Novelty Inc.) | MI 198–357 | 11–30–76 | Carl King |
| Ypsilanti Art Theatre Corp. | MI 009–433 | 11–30–76 | Carl King |
| Studio North Theatre Corp. | MI 011–502 | 12–07–76 | Carl King |

| CORPORATION NAME | STATE INCORPORATED FOREIGN CORPORATION | DATE | INCORPORATORS |
|---|---|---|---|
| Westpoint Drive–In Inc. (Hastings Theatre Corp.) | MI 051–836 | 06–17–77 | William Brandt |
| Grand Rapids Theatre Corp. | MI 199–636 | 07–07–77 | John H. Campbell |
| AMW Investments Inc. | DE 8426–06 | 08–24–77 | S.S. Simpson M.A. Ferrucci R.F. Andrews |
| Cinema Blue of Port Huron, Inc. | MI 081–265 | 08–30–77 | John Reide |
| International Amusement Ltd. (Otis Mohney Inc.) | MI 008–779 | 01–10–78 | Otis Mohney |
| Alpena Theatres Inc. | MI 050–700 | 02–06–78 | Lyle Sweet |
| Hammond Books Inc. | DE 849460 IN 7804–384 | 02–07–78 | |
| Cinema Blue of Fort Wayne, Inc. | DE 854040 IN 7807–114 | 05–11–78 | |
| Bloomington Cinema, Inc. | DE 8544–76 IN 7806–126 | 05–19–78 | |
| Breezeway Drive–In, Inc. | DE 0854485 IN 7806–400 | 05–19–78 | K.L. Husfelt E.L. Kinsler P.A. Wright |
| Cinema 35, Inc. | DE 0854493 OH 520–134 | 05–19–78 | K.L. Husfelt E.L. Kinsler P.A. Wright |
| Cinema 40, Inc. | DE 854472 IN 7806–129 | 05–19–78 | K.L. Husfelt E.L. Kinsler P.A. Wright |
| Issi Theatre Inc. | Del IN 7806–133 | 05–19–78 | E.L. Kinsler K.L. Husfelt P.A. Wright |
| Maplecroft Theatre Inc. | DE 854473 IN 7806–402 | 05–19–78 | K.L. Husfelt E.L. Kinsler P.A. Wright |
| Premium Films, Ltd. | NEV 2547–78 | 05–23–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Gail Palmer, Ltd. | NEV 2839–78 | 06–07–78 | N. David Weir Kathleen Lukosavich Sharon L. Gahlau |
| Ken Cooper Enterprises, Inc. | MI 018–408 | 06–20–78 | Kenneth W. Cooper |
| Cinema Blue of Saginaw, Inc. | MI 137–230 | 09–01–78 | Stirman C. Rowland |
| Blue Sky Drive–In, Inc. (Sunset Drive–In, Inc.) | MI 151–270 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Cinema Art Theatre of Bay City, Inc. | MI 102–270 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Cinema Art Theatre of Mishawaka, Inc. | IN 7809–416 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Cinema Art Theatre of Springfield, Inc. | IL 5155–169–9 | 09–18–78 | N. David Weir |
| Cinema Blue of Charlotte, Inc. | NC 243773 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Cinema Theatre of Kalamazoo, Inc. (Cinema X of Kalamazoo, Inc.) | MI 103–270 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Cinema X of Lansing, Inc. | MI 104–270 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Cinema X of Saginaw, Inc. | MI 106–270 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Crest Drive–In, Inc. | MI 108–270 | 09–18–78 | N. David Weir James L. Mulvihill Sharon L. Gahlau |
| Glen Theatre, Inc. | IN 7809–424 | 09–18–78 | N. David Weir James L. Mulvihill |

| CORPORATION NAME | STATE INCORPORATED FOREIGN CORPORATION | DATE | INCORPORATORS |
|---|---|---|---|
| New Art Theatre of Lansing, Inc. | MI 134–270 | 09–18–78 | Sharon L. Gahlau<br>N. David Weir<br>James L. Mulvihill |
| Northside Drive–In, Inc. | MI 136–270 | 09–18–78 | Sharon L. Gahlau<br>N. David Weir<br>James L. Mulvihill |
| Sceen Drive–In, Inc. | MI 148–270 | 09–18–78 | Sharon L. Gahlau<br>N. David Weir<br>James L. Mulvihill |
| Seaway Drive–In, Inc. | MI 149–270 | 09–18–78 | Sharon L. Gahlau<br>N. David Weir<br>James L. Mulvihill |
| Studio Art Theatre of Evansville, Inc. | IN 7809–444 | 09–18–78 | Sharon L. Gahlau<br>N. David Weir<br>James L. Mulvihill |
| Beverly Theatre, Inc. | MN 3C–994 | 09–19–78 | Sharon L. Gahlau<br>N. David Weir<br>James L. Mulvihill |
| World Wide Business Management and Consultants, Inc. | NV<br>MI 603–016 | 10–04–78 | Sharon L. Gahlau<br>Timothy G. Abbott<br>Harley E. Laughlin<br>Darla J. Abbott |
| Entertainment World, Inc. | DEL<br>MI 611–558 | 10–23–78 | M.A. Ferrucci<br>R.F. Andrews<br>W.J. Reif |
| Scio Drive–In, Inc. | MI 006–748 | 12–12–78 | Michael Y. Sandborn |
| Willow Drive–In, Inc. | MI 014–748 | 12–12–78 | Michael Y. Sandborn |
| Fort Wayne Books, Inc. | IN 7904–115 | 04–04–79 | James L. Mulvihill<br>Sharon L. Gahlau<br>Rebecca A. Landers |
| WEB Investments, Inc. | MI 214–136 | 04–06–79 | William E. Brandt |
| LPQ, Inc. | MI 212–691 | 05–15–79 | James L. Mulvihill<br>Sharon L. Gahlau |
| S & B Properties Inc. (Investment Assistance, Inc.) | # IL D5178–694–7<br># MI 232–471 | 07–02–79<br>07–25–80 | Sharon L. Gahlau<br>James L. Mulvihill<br>Donald F. Hickey |
| Corporate Investments, Inc. | NV<br>MI 613–504 | 07–03–79 | Rebecca A. Landers<br>James L. Mulvihill<br>Susan L. Fortin |
| Michigan Cabaret Theater, Inc. | MI 175–683 | 12–26–79 | James L. Mulvihill<br>Sharon L. Gahlau<br>Rebecca A. Landers |
| Cinema North, Inc. | MI 014–027 | 02–15–80 | Michael Y. Sandborn |
| Bay City Bookstore, Inc. | MI 207–367 | 02–29–80 | James L. Mulvihill<br>Donald F. Hickey |
| Michigan Bookstore, Inc. | MI 218–377 | 02–29–80 | James L. Mulvihill<br>Donald F. Hickey |
| North Crest Theatre, Inc. | MI 222–377 | 02–29–80 | James L. Mulvihill<br>Donald F. Hickey |
| Erotica House Bookstore, Inc. | IN 8003–017 | 03–03–80 | James L. Mulvihill<br>Donald F. Hickey |
| North Dakota Toys, Inc. (Erotica Arts Museum, Inc.) | IN 8003–016 | 03–03–80 | James L. Mulvihill<br>Donald F. Hickey |
| Night Train Corp. | MI 213–777 | 03–18–80 | Mary D. Morris |
| Pleasure Chest, Inc. | MI 222–115 | 05–01–80 | James L. Mulvihill<br>Donald F. Hickey |
| Saginaw Cinema Corp. | MI 213–625 | 05–29–80 | James L. Mulvihill<br>Donald F. Hickey |
| Bamon Corporation | OH E0757–1059 | 06–02–80 | Rebecca A. Landers<br>James L. Mulvihill<br>Susan L. Fortin |
| Shayna Films, Inc. | MI 229–940 | 04–08–81 | Lee J. Klein |
| Starlite Drive–In Theatre, Inc. | MI 037–211 | 04–08–81 | Lee J. Klein |
| Shiawassee Investment, Inc. | MI 278–333 | 09–15–81 | Ron Coryell<br>John Weir |
| World Video Systems, Inc. | IN 8110–655 | 10–22–81 | Gene Yarmy<br>Barbara Byrnes<br>James Lewellyn |

| CORPORATION NAME | STATE INCORPORATED FOREIGN CORPORATION | DATE | INCORPORATORS |
|---|---|---|---|
| Campus Theatre Inc. | MI 250–975 | 03–16–82 | Donald K. Gmelin Andrew F. Heise Susan L. Eldredge |
| Blue Movies, Inc. | KY 167815 | 06–17–82 | Donald K. Gmelin Andrew F. Heise Claudia L. Ziniuk |
| Saints Amusement Co. Inc. | MI 259–407 | 07–15–82 | James L. Mulvihill Andrew F. Heise Claudia L. Ziniuk |
| Playtime Productions, Inc. | IN 8210–459 | 10–18–82 | Leonard Astor Carolyn Hickman |
| Sunset Drive–In Inc. | MI 282–339 | 12–01–82 | Thomas Tompkins |
| National Association of Entertainment Facilities, Inc. | MI 709–709 | 01–03–83 | Kenneth R. Hale |
| Louisiana Toy Co., Inc. | LA 34113525 | 05–12–83 | Andrew P. Heise Claudia L. Ziniuk Sharon L. Gahlau |
| 4266 W. 38th St. Corporation | IN 8307–892 | 07–29–83 | James L. Mulvihill Sharon L. Gahlau Claudia L. Saari |
| See–K, Incorporated | IN 8308–350 | 08–10–83 | James L. Mulvihill Sharon L. Gahlau Claudia L. Saari |
| A J Films, Inc. | WA 22497044 | N/A | N/A |
| Ellwest Stereo Theatres of Fort Worth Inc. | TX * | N/A | N/A |
| Ellwest Stereo Theatres of Kansas City, Inc. | MO 154733 | N/A | N/A |
| Ellwest Stereo Theatre of Louisville Inc. | KY * | N/A | N/A |
| Ellwest Stereo Theatre of Nashville Inc. | TN * | N/A | N/A |
| Ellwest Stereo Theatres Inc. (New Orleans) | LA 28911400 D | N/A | N/A |
| Ellwest Stereo Theaters Incorporated of Md. | MD D0297291 | N/A | N/A |
| Ellwest Stereo Theaters, Inc. (Phoenix) | AZ 082012–8 | N/A | N/A |
| Ellwest Stereo Theaters of Memphis, Inc. | TN | N/A | N/A |
| Ellwest Stereo Theaters, Inc. (New York) | NY | N/A | N/A |
| Ellwest Stereo Theaters Pittsburgh, Inc. | PA 3–1–72.34–444 | N/A | N/A |
| Ellwest Stereo Theaters of Washington, D.C., Inc. | DC 722660 | N/A | N/A |
| Ellwest Stereo Theatres Youngstown, Inc. | OH 427–339 | N/A | N/A |
| Jolar Cinema, Inc. (Boston) | MA 103677 | N/A | N/A |
| Jolar Cinema of Houston, Inc. | TX | N/A | N/A |
| Jolar Cinema of San Diego Ltd. | CA 896741 | N/A | N/A |
| Show World of Dallas, Inc. | TX | N/A | N/A |
| Western Amusement Co., Inc. | WA 21210224 | N/A | N/A |

## APPENDIX B

| ENTITY | FISCAL YEAR | ENTITY | FISCAL YEAR |
|---|---|---|---|
| Cinema North | 2/28/82 | Otis Mohney, Inc. | 5/31/82 |
| Cinema North | 2/28/82 | Northcrest Theatre | 3/31/82 |
| Gail Palmer, Ltd. | 2/28/82 | Studio Art–Evansville | 6/30/82 |
| Pastime Coin | 1/31/82 | Hastings Drive–In | 12/31/81 |
| WWBM & C | 1/31/82 | Cinema Art–Springfield | 6/30/82 |
| Michigan Reef | 1/31/82 | Fort Wayne Books | 6/30/82 |
| Studio North | 5/31/82 | Cinema Blue–Port Huron | 7/31/82 |
| Ypsilanti Art | 5/31/82 | Cinema Blue–Saginaw | 7/31/82 |

(APPENDIX B—Continued)

| ENTITY | FISCAL YEAR |
|---|---|
| Studio 8 | — |
| Southland News | 10/31/82 |
| Flint Theatrical | 12/31/82 |
| Ken Cooper Enter. | 12/31/82 |
| Cinema Theatre–Kalamazoo | 12/31/82 |
| Michigan Reef | 1/31/83 |
| WWBM & C | 1/31/83 |
| WWBM & C | 1/31/83 |
| Shayna Films | 3/31/83 |
| Starlite Drive–In | 3/31/83 |
| | BK/918/MSM |
| Cinema North | 2/28/83 |
| Scio Drive–In | 2/28/83 |
| Saginaw Cinema | 2/28/83 |
| Studio North | 5/31/83 |
| West Point Drive–In | 5/31/83 |